Filed 4/21/14; pub. order 5/9/14 (see end of opinion)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ESTEBAN H. CARMONA et al., | B248143 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC484951) |
| v. | |
| LINCOLN MILLENNIUM CAR WASH, INC., et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Yvette M. Palazuelos, Judge.  Affirmed.

Blank Rome, Howard M. Knee and Kathy PourSanae for Defendants and Appellants.

Mexican American Legal Defense and Educational Fund, Victor Viramontes and Jorge M. Castillo for Plaintiffs and Respondents.

\* \* \* \* \* \*

Defendant car wash companies Lincoln Millennium Car Wash, Inc. (doing business as Millennium Car Wash), and Silver Wash, Inc. (doing business as Santa Monica Car Wash and Detailing), appeal from the trial court's order denying their petition to compel arbitration. Plaintiffs Esteban H. Carmona, Marcial H. Carmona, Pedro Cruz, and Yoel Isail Matute Casco are or were employed by the car wash companies and filed a putative class action against them for wage and hour violations. The trial court held the arbitration agreement at issue was unconscionable and refused to enforce it. We find no error and affirm.

## FACTS AND PROCEDURE

### 1. *The Agreement*

Each plaintiff signed an employment agreement containing an arbitration clause. The agreements contain between four and six pages, depending on the plaintiff. The pertinent portions of each plaintiff's agreement are identical. The agreements contain the following arbitration clause, which was initialed by the plaintiffs:

> "**Settlement by Arbitration**
>
> Any dispute under or out of or regarding any aspect of employee's employment, including its information, or any act which would violate any provision in this employment contract, shall be resolved exclusively through final and binding arbitration by an experienced licensed [*sic*] to practice law in California and selected in accordance with the expedited Employment Dispute rules of the American Arbitration Association in effect at the time of such dispute, pursuant to the Federal Arbitration Act. Judgment will be on any award by arbitrator's by [*sic*] in any court having jurisdiction."[1]

---

[1] The employment agreements contain numerous apparent errors such that they are unnecessarily confusing at points, as may become clear in the excerpts we quote. For instance, there appears to be an omitted word in the arbitration provision between "experienced" and "licensed." The phrase should likely read "an experienced [arbitrator] licensed to practice law in California." As another example, the last sentence of this provision appears to contain several typos, but it likely means that judgment shall be had on any award rendered by an arbitrator.

Directly under the arbitration clause, the agreements also contain the following confidentiality clause:

"**Confidential Information**

"I acknowledge that I have been informed that it is the policy of the Employee to maintain as secret and confidential all information relating to [the car wash] and my employment.

"I agree and understand that any problems or concerns with anything related to my at will employment with [*sic*] be discussed with management and ownership so it can be resolved before any information is divulged to any persons, firms, corporations, media agency, governmental entities or agencies, other entities [*sic*]."

In addition to this stand-alone confidentiality clause, the agreements contain a subagreement entitled "Confidentiality Agreement," which spans approximately a page and a half (the confidentiality subagreement). This subagreement contains yet another heading entitled "Confidential Information." This section states, among other things:

"Confidential Information. Employee acknowledges that he/she has learned and will learn Confidential Information, as defined herein, relating to the business conducted by [the car wash]. Employee agrees that he/she will not, except in the normal and proper course of his/her duties, disclose or enable anyone else to disclose or use, either during the Employment Term or subsequent thereto for the applicable period of, any such Confidential Information without prior written approval from [the car wash].

"'Confidential Information' shall include, but not [be] limited to, the following types of information, both existing and contemplated, and regarding [the car wash]; corporate information, including contractual licensing arrangements, plans, strategies, tactics, policies, resolutions, patent applications and any litigation or negotiations; marketing information, including sales or product plans, strategies, tactics, methods, customers, prospects, or market research data; financial information, including costs and performance data, debt arrangements, equity structure, investors and holdings; operational formulae, control and inspection practices and background information suppliers; technical information, including machinery, designs, drawings and specifications; and personnel information, including personnel lists, resumes [*sic*], pay rates, personnel data, organizational structure and performance evaluations."

3

The confidentiality subagreement contains the following enforceability clause:

"Enforceability.  The Employee understands that [the car wash]'s position is highly dependent on the Confidential Information.[]  Any disclosure or breach of this Agreement will cause immediate, irreparable harm to [the car wash].  THAT IS TO INCLUDE any information shared with other employees of the company.  Any breach or threatened breach of this Agreement, therefore may be present [*sic*] to either a court or binding arbitrator for enforcement by both injunction and damages.  In the event that [the car wash] institutes litigation or arbitration seeking enforcement of this Agreement, [the car wash] shall be entitled to recover reasonable attorney fees and costs incurred in such litigation or arbitration."

Both the arbitration clause and the stand-alone confidentiality clause have been translated into Spanish.  No part of the confidentiality subagreement, including the enforceability clause, has been translated into Spanish.

Plaintiff Esteban Carmona's[2] native language is Spanish.  He could not speak or read English when he started working at Millennium Car Wash.  Two weeks after he started working at the car wash, the manager gave Esteban what he thought was a work application.  Parts of the document were written in Spanish and others were written in English.  Esteban did not understand the parts in English.  It was his understanding he had to sign the document in the form presented to him, otherwise he would not be permitted to work at the car wash.  The car wash managers never explained the document to him, and no one told him he was waiving his right to appear before a court.  In fact, he did not think he was waiving this right by signing the document.  He did not understand what an arbitration proceeding meant.  He never received any additional documents from the car wash regarding arbitration proceedings.

Similarly, plaintiff Matute Casco's native language is Spanish.  He can read very little Spanish and cannot read English at all.  When he applied to work at Santa Monica

---

**2**     Because there are two Carmona plaintiffs, we will refer to Esteban Carmona by his first name to avoid any confusion.  We do not intend this informality to reflect a lack of respect.

4

Car Wash and Detailing he was given what he thought was a work application. Parts were written in Spanish and others were written in English. He was given just a few minutes to review the document. He did not understand any of the parts written in English. It was also his understanding he had to sign the document in the form presented to him, otherwise he would not be permitted to work at the car wash. The car wash managers did not explain the document to him either. No one told him he was waiving his right to appear before a court, and in fact, he did not think he was waiving this right by signing the document. He did not understand what an arbitration proceeding meant. He never received any additional documents from the car wash regarding arbitration proceedings.[3]

Before moving on, we find it necessary to clarify exactly what constitutes the arbitration agreement here. There is, of course, the clause entitled "**Settlement by Arbitration**," which we refer to as the arbitration clause. Read properly, the stand-alone confidentiality clause also relates to arbitration. This clause requires employees to discuss any disputes with management before divulging any information about the car wash companies to "any persons, firms, corporations, media agency, governmental entities or agencies, [or] other entities." Thus, before going to any attorneys or submitting anything to a trial court or dispute resolution entity such as the American Arbitration Association (AAA), the employees are required to talk to the car wash companies. Additionally, the enforceability clause in the confidentiality subagreement also pertains to certain disputes between employee and employer and arbitration rights.

Despite the fact that these clauses are under separate headings and, in the case of the enforceability clause, are on different pages, they are all parts of the same employment agreement and should be read in conjunction to ascertain the entire "arbitration agreement." (See Civ. Code, §§ 1641 ["The whole of a contract is to be

---

**3** The other two plaintiffs, Marcial Carmona and Cruz, did not file declarations in the trial court.

5

taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."], 1642 ["Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."].)

## 2. *Trial Court's Ruling on the Petition to Compel Arbitration*

The trial court denied the car wash companies' petition to compel arbitration. The court held the agreement to arbitrate was unconscionable. First, it held the agreement was procedurally unconscionable. It noted the car wash companies conceded the agreement was procedurally unconscionable. The court found the car wash companies presented the agreement on a "take it or leave it basis," they did not provide the applicable rules of the AAA, and they gave plaintiffs insufficient time to review the agreement. Further, the car wash companies translated some parts of the agreement into Spanish, but chose not to translate some key provisions. This "amount[ed] to a large amount of procedural unconscionability."

Second, the court held the agreement was substantively unconscionable for lack of mutuality. The enforceability clause allowed the car wash companies to bring their claims for damages or injunctive relief against plaintiffs in court, but plaintiffs were restricted to arbitration. The clause also stated any breach of the confidentiality subagreement would result in immediate, irreparable harm to the car wash, and plaintiffs did not get the benefit of a parallel presumption on their claims. The enforceability clause further permitted the car wash companies to recover their attorney fees while failing to give plaintiffs the same right. In addition, a representative of the car wash companies did not sign the agreements. In all, the court held the agreement was permeated with procedural and substantive unconscionability and refused to enforce it.

The car wash companies filed a timely notice of appeal from the order denying their petition.

## STANDARD OF REVIEW

"On appeal from the denial of a motion to compel arbitration, 'we review the arbitration agreement de novo to determine whether it is legally enforceable, applying

6

general principles of California contract law.'" (*Baker v. Osborne Development Corp.* (2008) 159 Cal.App.4th 884, 892.) Thus, unconscionability is a question of law we review de novo. (*Ibid.*) To the extent the trial court's determination on the issue turned on the resolution of contested facts, we would review the court's factual determinations for substantial evidence. (*Ibid.*) The evidence is not disputed in this case, however.

We review the court's decision whether to sever portions of the arbitration agreement for abuse of discretion. (*Lhotka v. Geographic Expeditions, Inc.* (2010) 181 Cal.App.4th 816, 821.)

## DISCUSSION

If a court finds as a matter of law that a contract or any clause of a contract is unconscionable, the court may refuse to enforce the contract or clause, or it may limit the application of any unconscionable clause so as to avoid any unconscionable result. (Civ. Code, § 1670.5, subd. (a).) A petition to compel arbitration based on a written arbitration agreement must be granted unless grounds exist to revoke the agreement. (Code Civ. Proc., §§ 1281, 1281.2, subd. (b).) An agreement to arbitrate, like any other contract, is subject to revocation if the agreement is unconscionable. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 98 (*Armendariz*).)

"'[U]nconscionability has both a "procedural" and a "substantive" element,' the former focusing on '"oppression"' or '"surprise"' due to unequal bargaining power, the latter on '"overly harsh"' or '"one-sided"' results. [Citation.] 'The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [Citation.] But they need not be present in the same degree. 'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' [Citations.] In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz, supra*, 24 Cal.4th at p. 114.)

7

## 1. *Procedural Unconscionability*

The car wash companies concede procedural unconscionability on appeal, as they did in the trial court. We nevertheless address this prong to explain that we agree with the trial court the degree of procedural unconscionability here is high, at least with respect to the two plaintiffs who provided declarations. "The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246 (*Pinnacle*).) Oppression arises from an inequality of bargaining power, when one party has no real power to negotiate or a meaningful choice. Surprise occurs when the allegedly unconscionable provision is hidden. (*Id.* at p. 247.) Here, we have both oppression and surprise.

Oppression generally "takes the form of a contract of adhesion, '"which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it."'" (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071.) In the case of arbitration agreements in the employment context, "'the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement.'" (*Ibid.*, quoting *Armendariz, supra*, 24 Cal.4th at p. 115.)

The undisputed evidence showed these arbitration agreements were procedurally unconscionable. The car wash companies drafted these agreements and presented a printed form to Esteban and Matute Casco, who both indicated that if they did not sign the agreement in the form presented, they would not be permitted to work at the car wash.

(*Trivedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387, 393.) There is no indication they had the opportunity to negotiate any of the terms.[4]

Although the agreement referenced the employment dispute rules of the AAA, the car wash companies did not provide those rules. Failure to provide the applicable arbitration rules is another factor that supports procedural unconscionability. (*Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1146 (*Samaniego*); *Trivedi v. Curexo Technology Corp., supra*, 189 Cal.App.4th at p. 393; *Harper v. Ultimo* (2003) 113 Cal.App.4th 1402, 1406.) This failure contributes to oppression because the employee "is forced to go to another source to find out the full import of what he or she is about to sign -- and must go to that effort *prior* to signing." (*Harper v. Ultimo, supra*, at p. 1406.) Additionally, the arbitration agreement itself does not explain what arbitration means, no one explained the arbitration agreement to plaintiffs, and in Matute Casco's case, he was given only a few minutes to review the multi-page employment agreement. (*Wherry v. Award, Inc.* (2011) 192 Cal.App.4th 1242, 1247 [among factors considered by court in finding arbitration provision procedurally unconscionable were that "[n]o one described the agreement's contents and plaintiffs were given but a few minutes to review and sign it"].)

What elevates this case to a high degree of procedural unconscionability, however, is the element of surprise regarding a key clause, the enforceability clause. We discuss the import of the enforceability clause more in the following part. The car wash

---

**4** We recognize "a predispute arbitration agreement is not invalid *merely* because it is imposed as a condition of employment. [T]he mandatory nature of an arbitration agreement does not, by itself, render the agreement unenforceable." (*Lagatree v. Luce, Forward, Hamilton & Scripps* (1999) 74 Cal.App.4th 1105, 1122-1123, italics added.) But the adhesive nature of a contract is one factor the courts may consider in determining the degree of procedural unconscionability. (*Little v. Auto Stiegler, Inc., supra*, 29 Cal.4th at p. 1071.) And as we explain further, the agreement here went beyond just an adhesive contract presented as a condition of employment. Several other factors contributed to the agreement's procedural and substantive unconscionability.

companies hid the enforceability clause and the entire confidentiality subagreement by failing to translate that portion of the agreement into Spanish. Esteban and Matute Casco could not read English, and yet the car wash companies provided the enforceability clause in English only. The car wash companies evidently knew the plaintiffs required Spanish translations because they provided some translation.[5] The record does not reveal why the car wash companies did not translate the entirety of the employment agreement. In sum, with both oppression and surprise present, there is no question the arbitration agreement was procedurally unconscionable.

## 2. *Substantive Unconscionability*

To reiterate, we assess unconscionability with a sliding scale approach. (*Armendariz, supra*, 24 Cal.4th at p. 114.) In light of the high degree of procedural unconscionability, even a low degree of substantive unconscionability could render the arbitration agreement unconscionable. The degree of substantive unconscionability here was not particularly low.

"Given the lack of choice and the potential disadvantages that even a fair arbitration system can harbor for employees, we must be particularly attuned to claims that employers with superior bargaining power have imposed one-sided, substantively unconscionable terms as part of an arbitration agreement." (*Armendariz, supra*, 24 Cal.4th at p. 115.) "Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. [Citations.] A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to "shock the conscience."'" (*Pinnacle, supra*, 55 Cal.4th at p. 246.)

---

[5]     This holds true for the two plaintiffs who did not provide declarations as well. We do not know for certain whether they could read English, but their agreements are also partially translated into Spanish. The inference is that they could not read English either.

10

"'[T]he paramount consideration in assessing [substantive] conscionability is mutuality.'" (*Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1281.) As our Supreme Court reasoned in *Armendariz*: "Given the disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on 'business realities.' As has been recognized '"unconscionability turns not only on a 'one-sided' result, but also on an absence of 'justification' for it."' [Citation.] If the arbitration system established by the employer is indeed fair, then the employer as well as the employee should be willing to submit claims to arbitration. Without reasonable justification for this lack of mutuality, arbitration appears less as a forum for neutral dispute resolution and more as a means of maximizing employer advantage. Arbitration was not intended for this purpose." (*Armendariz, supra*, 24 Cal.4th at pp. 117-118.)

Here, the arbitration agreement is lacking in mutuality in that it "requir[es] arbitration only for the claims of the weaker party but a choice of forums for the claims of the stronger party." (*Armendariz, supra*, 24 Cal.4th at p. 119.) Reading the arbitration clause alone, one might think the agreement to arbitrate is mutual; the clause states that "[a]ny dispute" regarding the plaintiffs' employment shall be resolved exclusively through arbitration. But notably, only the employees initialed next to the clause, and only they signed the agreement. Nowhere do the car wash companies indicate they were bound by the clause. The only party clearly agreeing to the clause was the employee. As noted in *Armendariz*, "the lack of mutuality can be manifested as much by what the agreement does not provide as by what it does." (*Id.* at p. 120.)

It becomes clear the car wash companies have not agreed to arbitrate all employment related disputes when one gets to the enforceability clause. This clause gives the car wash companies the choice of either court or arbitration when pursuing breaches of the confidentiality subagreement: "Any breach or threatened breach of this Agreement, therefore may be present [*sic*] to either a court or binding arbitrator for

enforcement by both injunction and damages." The choice of forums is available only to the car wash companies. The employees would never be in a position to pursue the car wash companies for breach of the confidentiality subagreement. The subagreement defines confidential information and imposes a duty on the employees not to disclose such information, but it does not impose any duties or obligations on the car wash companies. And the employees' potential exposure to liability for breach is not insignificant, given how broadly the car wash companies have defined confidential information and breach. Confidential information includes things as mundane as pay rates and performance evaluations, and a breach can include sharing information with outsiders *and* merely sharing information with other employees of the company.

Courts have repeatedly found this type of one-sided provision -- where the employer exempts claims only it would bring from arbitration while restricting any employee claims to arbitration -- to be substantively unconscionable. (See, e.g., *Armendariz, supra*, 24 Cal.4th at p. 120 [substantively unconscionable provision required employees to arbitrate wrongful termination claims but employer had no corresponding obligation to arbitrate its trade secret claims against employees]; *Samaniego*, *supra*, 205 Cal.App.4th at p. 1147 [substantively unconscionable provision required employees to arbitrate all claims but exempted from arbitration employer claims "seeking declaratory and preliminary injunctive relief to protect [employer's] proprietary information and noncompetition/nonsolicitation provisions"]; *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 725 [substantively unconscionable provision compelled arbitration of claims more likely to be brought by employee but exempted from arbitration claims most likely to be brought by employer, such as violations of noncompetition agreement or disclosure of confidential information]; *O'Hare v. Municipal Resource Consultants* (2003) 107 Cal.App.4th 267, 274 [substantively unconscionable provision required employees to arbitrate any work related dispute but exempted from arbitration employer claims for injunctive and equitable relief based upon employees' alleged breaches of confidentiality provisions].) The trial court did not err in finding the same type of one-sided agreement to be substantively unconscionable here.

Moreover, the car wash companies have not justified the lack of mutuality with reference to business realities. (*Armendariz, supra*, 24 Cal.4th at p. 117-118 ["'"[U]nconscionability turns not only on a 'one-sided' result, but also on an absence of 'justification' for it."'"].) The confidentiality subagreement simply states the car wash companies' position is "highly dependent on the Confidential Information." This conclusory statement is no explanation, and neither the record nor the briefing in this case offers facts justifying the one-sidedness.

Instead, the car wash companies argue the enforceability clause represents a "bilateral choice of venue provision." (Capitalization and underscoring omitted.) They assert the choice of forums is actually left up to the employee. If the employee agrees to the arbitration clause, then the choice of forum in the enforceability clause is taken away from the car wash companies, and they must choose arbitration. But if the employee does *not* agree to the arbitration clause, the car wash companies are free to bring their confidentiality claims in court. We are not persuaded. The plain language of the enforceability clause gives the car wash companies a choice between court and arbitration. The clause does not tie that choice to any choice by the employee or restrict in any manner the car wash companies' ability to choose between forums. The clear language of the contract controls (Civ. Code, § 1638), and in this case, it shows the agreement to be lacking in mutuality.

The arbitration agreement lacks mutuality not just in available forums, but in a few other ways, and in none of these cases is there a justification proffered for the one-sidedness. Attorney fees are one of these other points on which the car wash companies unilaterally benefit. The enforceability clause permits the car wash companies to recover reasonable attorney fees and costs whenever they institute litigation or arbitration to enforce the confidentiality subagreement, not just when they prevail. No reciprocal provision exists allowing employees to recover attorney fees and costs, regardless of whether they have instituted the proceedings or prevailed in the proceedings. The car wash companies argue the attorney fee provision does not lack mutuality because, as a matter of law, it cannot be one-sided, citing Civil Code section 1717. Section 1717 does,

13

indeed, make "an otherwise unilateral right reciprocal, thereby ensuring mutuality of remedy . . . 'when the contract provides the right to one party but not to the other.'" [Citation.] In this situation, the effect of section 1717 is to allow recovery of attorney fees by whichever contracting party prevails, 'whether he or she is the party specified in the contract or not.'" (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 610-611.)

Still, the attorney fee provision is not conscionable merely because section 1717 might provide employees relief from the provision's one-sidedness. The court's reasoning in *Samaniego* demonstrates the flaw in this argument. There, the arbitration agreement contained a unilateral fee-shifting provision requiring employees to pay any attorney fees the employer, Empire, might incur "'to enforce any of its rights'" under the employment agreement. (*Samaniego, supra*, 205 Cal.App.4th at p. 1143.) The court held: "[S]uch a clause contributes to a finding of unconscionability. [Citation.] Empire argues this clause is of no moment because, after all, one-way fee-shifting provisions that benefit only employers violate both the Labor Code and commercial arbitration rules, 'which means that Empire cannot recover its attorney's fees from plaintiffs even if it prevails in arbitration.' In other words, according to Empire, it isn't unconscionable because it is illegal and, hence, unenforceable. To state the premise is to refute Empire's logic. The argument is unpersuasive." (*Id.* at p. 1147.)

The car wash companies' argument represents the same sort of flawed logic. "'Section 1717 was enacted to make all parties to a contract, especially an "adhesion contract," equally liable for attorney's fees and other necessary disbursements.'" (*System Inv. Corp. v. Union Bank* (1971) 21 Cal.App.3d 137, 163.) "The statute was designed to establish mutuality of remedy when a contractual provision makes recovery of attorney fees available to only one party, and to prevent the *oppressive use of one-sided attorney fee provisions*." (*Trope v. Katz* (1995) 11 Cal.4th 274, 285, italics added.) In other words, the statute was enacted to prevent the application of substantively unconscionable attorney fee provisions. According to the car wash companies, the attorney fees provision is not unconscionable because it is oppressively one-sided and unenforceable as

14

written.  To quote our colleagues in *Samaniego*, "[t]o state the premise is to refute [their] logic."  (*Samaniego*, 205 Cal.App.4th at p. 1147.)

In addition to lacking mutuality in forums and attorney fees, the arbitration agreement lacks mutuality when it presumes harm to the car wash companies in their confidentiality claims.  The enforceability clause states any disclosure or breach of the confidentiality subagreement "will cause immediate, irreparable harm to [the car wash companies]."  Irreparable harm is one of the factors courts consider when deciding whether to issue an injunction.  (*Jay Bharat Developers, Inc. v. Minidis* (2008) 167 Cal.App.4th 437, 446.)  The agreement does not state a reciprocal presumption of harm favoring employees in their claims.

Finally, the arbitration agreement lacks mutuality in that the stand-alone confidentiality clause requires employees to discuss with the car wash companies "any problems or concerns with anything related to" their employment before disclosing any information to outsiders, including attorneys, courts, or arbitration organizations.  The employer has no corresponding obligation under the agreement to discuss its disputes with employees before taking action in court or through arbitration.  In *Nyulassy v. Lockheed Martin Corp., supra*, 120 Cal.App.4th at pages 1282-1283, the court held a similar provision was one of three provisions contributing to the substantive unconscionability of an arbitration agreement.  As a precondition to arbitration, the employee was required to attempt to resolve any employment disputes by engaging in discussions with several levels of management.  (*Id.* at p. 1273.)  The court held "on its face, this provision may present a laudable mechanism for resolving employment disputes informally, [but] it connotes a less benign goal.  Given the unilateral nature of the arbitration agreement, requiring plaintiff to submit to an employer-controlled dispute resolution mechanism (i.e., one without a neutral mediator) suggests that defendant would receive a 'free peek' at plaintiff's case, thereby obtaining an advantage if and when plaintiff were to later demand arbitration."  (*Id.* at pp. 1282-1283.)  We likewise

15

conclude this unilateral "free peek" provision contributes to the substantive unconscionability of an agreement that already lacks mutuality.[6]

## 3. *Severability*

Having found, consistent with trial court's decision, that the arbitration agreement is both procedurally and substantively unconscionable, the only remaining question is whether the court abused its discretion in determining the agreement was permeated by unconscionability and refusing to sever the unconscionable provisions. The car wash companies contend the court erred because all of the unconscionable provisions are contained in one clause, the enforceability clause, which can be easily severed while still preserving the agreement to arbitrate in the arbitration clause. We conclude the court did not err.

A trial court has the discretion to refuse to enforce an agreement as a whole if it is permeated by the unconscionability. (*Armendariz, supra*, 24 Cal.4th at p. 122.) "The overarching inquiry is whether '"the interests of justice . . . would be furthered"' by severance." (*Id.* at p. 124.) If the central purpose of a contractual provision, such as an arbitration agreement, is tainted with illegality, then the provision as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contractual provision, and can be severed or restricted from the rest, then severance is appropriate. (*Ibid.*)

When an arbitration agreement contains multiple unconscionable provisions, "[s]uch multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." (*Armendariz, supra*, 24 Cal.4th at p. 124.) Under such

---

[6] The car wash companies urge us to disregard this "free peek" argument because plaintiffs did not raise it in the trial court. We decline this invitation and exercise our discretion to consider the argument. The principle that an appellate court ordinarily will not consider arguments raised for the first time on appeal does not apply when "the new argument raises a pure issue of law on undisputed facts." (*C9 Ventures v. SVC-West, L.P.* (2012) 202 Cal.App.4th 1483, 1492.) Whether this provision is unconscionable is a question of law, and as we previously noted, the evidence is not disputed in this case.

16

circumstances, a trial court does not abuse its discretion in determining the arbitration agreement is permeated by an unlawful purpose.

The arbitration agreement here suffered from multiple defects demonstrating a systemic lack of mutuality that favored the car wash companies, including the exemption from arbitration of the car wash companies' confidentiality claims, the attorney fees provision, the "free peek" provision, and the presumption of harm in favor of the car wash companies. We therefore conclude the court did not err in finding the agreement permeated by unconscionability and refusing severance.

## DISPOSITION

The order is affirmed. Respondents to recover costs on appeal.


FLIER, J.

WE CONCUR:


BIGELOW, P. J.


RUBIN, J.

17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ESTEBAN H. CARMONA et al., | B248143 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC484951) |
| v. | |
| LINCOLN MILLENNIUM CAR WASH, INC., et al., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendants and Appellants. | NO CHANGE IN JUDGMENT |

THE COURT:*

The opinion in the above-entitled matter filed on April 21, 2014, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

---

*       BIGELOW, P. J.                    RUBIN, J.                    FLIER, J.

18