Filed 2/1/22  P. v. American Surety Company CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE, | C091551, C091552 |
| Plaintiff and Respondent, | (Super. Ct. Nos. CRF180109201, CRF180109202) |
| v. | |
| AMERICAN SURETY COMPANY, | |
| Defendant and Appellant. | |

After codefendants Xavier Franco Torres and Manuel Franco Camacho were charged in a criminal complaint, the trial court set bail for each codefendant in the amount of $50,000.  Act Fast Bail Bonds (Act Fast), as agent for appellant American Surety Company (American Surety), posted bail bonds in that amount for each codefendant.  Both codefendants failed to appear at a required hearing.  The trial court ordered bail forfeited, notified Act Fast and American Surety of the forfeitures, and entered summary judgment.  American Surety moved to set aside the summary judgment,

1

to discharge the forfeitures, and to exonerate bail.  The trial court denied the motion and American Surety appealed.  On our own motion, we ordered the appeals consolidated for purposes of oral argument and decision only.

American Surety asserts that, in setting bail, the trial court failed to consider codefendants' particular circumstances including their ability to pay and the minimum amounts required to effect legitimate government interests.  Therefore, according to American Surety, the order setting bail violated codefendants' constitutional due process rights, rendering the bail contracts void.  American Surety further asserts that, even if the bail contracts were not void, it would be unconscionable to enforce them.

We affirm the judgment.

## FACTS AND HISTORY OF THE PROCEEDINGS

A complaint charged codefendants Torres and Camacho with first degree residential burglary (Pen. Code, § 459 [statutory section references that follow are to the Penal Code unless otherwise stated]), cultivating in excess of six marijuana plants with concurrent violation of environmental law (Health & Saf. Code, § 11358, subd. (d)(3)), and conspiracy to commit a crime (§ 182, subd. (a)(1)).

On June 19, 2018, the trial court appointed attorneys to represent the codefendants and the court continued the arraignment to June 22, 2018.  The trial court set bail at $50,000 for each defendant stating, "the bail remains at $50,000 at this point in time.  That's the bail schedule."  The court ordered the codefendants to be present on the next hearing date.

American Surety, through its agent Act Fast, posted bond number AS50-212113 in the amount of $50,000 for Torres and bond number AS50-207501 in the amount of $50,000 for Camacho.

2

On June 22, 2018, neither defendant appeared as ordered. The court ordered bail forfeited and issued warrants. The clerk sent notices of forfeiture of the $50,000 bonds on June 26, 2018.

On January 31, 2019, pursuant to section 1305.4, the court granted an extension of the 180 day time requirement set forth in section 1305, subdivision (c)(1).

On August 1, 2019, the trial court denied a motion made pursuant to section 1305, subdivision (g) to exonerate bail.

On September 13, 2019, the trial court denied Act Fast's motion to vacate forfeiture and reinstate and exonerate the bail bonds. The court stated the motion was untimely, lacked merit, and the court lacked jurisdiction to grant it. Judgments on the same date were entered in favor of the People and against Act Fast and American Surety in the amounts of $50,000. Notices of entry of the summary judgment were sent and filed on September 16, 2019.

On November 4, 2019, American Surety filed a motion to set aside summary judgment, discharge forfeiture, and exonerate bail. American Surety asserted that, where the bail penalty is set based on an unconstitutional order, the bond is void and the court lacks jurisdiction to enforce the unconstitutional penalty. American Surety further asserted that, because bail was set based on an unconstitutional order, which did not reasonably calculate the amount of bail, the bond was void as an unenforceable liquidated damages provision.

County counsel opposed the motion, asserting that American Surety's arguments had been considered and summarily rejected in *People v. Accredited Surety and Casualty Co.* (2019) 34 Cal.App.5th 891 (*Accredited Surety*). County counsel also asserted American Surety had failed to provide any authority to establish that a bail schedule pursuant to section 1269b is unconstitutional.

On December 12, 2019, relying on *Accredited Surety, supra*, 34 Cal.App.5th 891, and characterizing that case as on point, the trial court denied the motion.

3

DISCUSSION

I

*Standing*

County counsel contends American Surety lacks standing to assert that the codefendants' constitutional rights were violated in the setting of bail. County counsel seems to ignore the discussion of standing in *Accredited Surety, supra*, 34 Cal.App.5th 891. In that case, another panel of this court stated: "We agree [the surety] would lack standing to assert a violation of [the defendant's] constitutional rights at the bail setting hearing. [The surety], however, is not appealing the order setting bond. In this case, [the surety] is arguing that *as a consequence* of the potential violation of [the defendant's] constitutional rights, the bond contract, to which [the surety] is a named party, is invalid. 'At its core, standing concerns a specific party's interest in the outcome of a lawsuit. [Citations.] We therefore require a party to show that he or she is sufficiently interested as a prerequisite to deciding, on the merits,' the claims presented by the litigation. [Citation.] As a party to the bond contract, [the surety] has standing to raise claims involving its validity. [Citations.] [The surety] has standing because its claim is based on a theory that the constitutional violation rendered the contract itself void." (*Id.* at pp. 896-897.)

The circumstances are the same here as in *Accredited Surety*. We see no reason to depart from the standing analysis in that case, and, accordingly, we reject county counsel's contention that American Surety lacks standing to advance its claims.

II

*Motion to Set Aside Summary Judgment, Discharge Forfeiture, and Exonerate Bail*

American Surety asserts that the trial court erred in denying its motion to set aside summary judgment, discharge forfeiture, and exonerate bail because the court's failure to

4

set bail in an amount based on a constitutional order rendered the penalty clause of the bail contract void. According to American Surety, "[s]ince bail is a contract of surety, the duties of the surety to the State are entirely dependent upon the validity of the obligation imposed by the court against the defendant," and "[e]xcessive bail cannot form a valid obligation for the defendant." American Surety asserts that, without conducting a bail setting hearing, the trial court failed to ensure the amount set for bail was not a penalty, but was instead the minimum amount necessary to effect the legitimate government interests of ensuring the codefendants' appearance in court and public safety.

As did the surety in *Accredited Surety, supra*, 34 Cal.App.5th at page 896, American Surety here relies in part on *In re Humphrey* (2018) 19 Cal.App.5th 1006, review granted May 23, 2018, S247278 (*Humphrey*), in support of its position that the trial court violated the codefendants' constitutional due process rights by failing to consider their respective circumstances including their ability to pay and the minimum amounts necessary to further legitimate government interests before setting the bail amounts. Like the surety in *Accredited Surety* (*Accredited Surety*, at p. 896), American Surety asserts that, because the process used to set bail did not satisfy constitutional due process requirements, the bail bond contracts are unconstitutional and void.

While these appeals were pending, the California Supreme Court filed its decision in *In re Humphrey* (2021) 11 Cal.5th 135. Our high court concluded that it is unconstitutional to detain an individual pretrial solely because he or she lacks the financial resources to pay bail. (*Id*. at pp. 142-143.) "An arrestee may not be held in custody pending trial unless the court has made an individualized determination that (1) the arrestee has the financial ability to pay, but nonetheless failed to pay, the amount of bail the court finds reasonably necessary to protect compelling government interests; or (2) detention is necessary to protect victim or public safety, or ensure the defendant's appearance, and there is clear and convincing evidence that no less restrictive alternative will reasonably vindicate those interests." (*Id*. at p. 156.)

5

However, *In re Humphrey* does not decide the issues presented here because we conclude that setting bail without the individualized consideration of a defendant's circumstances, thus violating his constitutional rights, does not void the underlying bail bond.

In *Accredited Surety*, another panel of this court considered whether the procedural defects setting defendant's bail, as defined by *Humphrey*, voided the bail bond contract itself, but concluded the constitutional violation does not void the underlying bail bond. (*Accredited Surety, supra*, 34 Cal.App.5th at p. 897.)

In *Accredited Surety*, the court recited aspects of the *Humphrey* case, including the following: the "First District Court of Appeal held that pretrial detention determinations must be based on factors related to the individual defendant's circumstance, including the defendant's ability to pay, to ensure that a defendant 'not be imprisoned solely due to poverty and that rigorous procedural safeguards are necessary to assure the accuracy of determinations that an arrestee is dangerous and that detention is required due to the absence of less restrictive alternatives sufficient to protect the public.' [Citation.] Accordingly, the [*Humphrey*] court reversed the bail setting determination and remanded for a new hearing, at which time Humphrey would have 'the opportunity to provide evidence and argument, and the court [would] consider[ ] his financial resources and other relevant circumstances, as well as alternatives to money bail. If the court determine[d] that [Humphrey] [wa]s unable to afford the amount of money bail it f[ound] necessary to ensure [Humphrey]'s future court appearances, it [could] set bail at that amount only upon a determination by clear and convincing evidence that no less restrictive alternative w[ould] satisfy that purpose. The court's findings and reasons must be stated on the record or otherwise preserved.' " (*Accredited Surety*, at pp. 897-898.)

After reviewing *Humphrey*, the court in *Accredited Surety* rejected the surety's contentions, which American Surety reprises here, that the underlying bail bond contract was unconstitutional and void because the trial court violated the defendant's

constitutional rights by failing to consider his individual circumstances including the ability to pay before setting the bail amount. We quote *Accredited Surety* extensively as follows, because, as the trial court determined, it is on point here and effectively disposes of American Surety's contentions:

"*Humphrey* did not discuss the validity of a bail bond contract issued following a constitutionally inadequate hearing. *Humphrey* was concerned with how bail setting procedures can prevent a defendant from being able to make bail. The rights addressed in *Humphrey*, and the procedural requirements announced by the court, are intended to guard defendants' liberty interests. [Citation.] *Nothing in Humphrey or the statutory rules regarding the setting of bail relieves the surety of its obligations under the bond once it has been executed.*

"Accredited argues the bond should not be forfeited because the procedures used to set the bail amount were defective. Similar arguments regarding defects in the bailsetting procedures have been rejected. '*Defects and irregularities, if any, in the proceedings preliminary to the taking of bail are considered as waived by the surety when it assumes its obligations as such at the time of the execution of the bond.*' [Citations.] We find the analysis in these cases persuasive. *Accredited waived any procedural irregularities in the bail setting hearing when it 'assume[d] its obligations . . . at the time of the execution of the bond.*' [Citations.]

"*Moreover, noncompliance with the procedural requirements for setting bail 'have no legal effect on the forfeiture of bail upon defendant's failure to appear for sentencing.*' [Citation.] The statutory procedural requirements for setting bail set forth in sections 1269a, 1269b, 1269c, 1270.1, and 1275 do not 'address the validity of the bond but rather the procedure for the release of a defendant from custody upon bail.' [Citation.] The procedural requirements contained in these sections were not intended to protect the surety on the bail bond. In contrast, the procedural requirements set forth in sections 1305 and 1306, dealing with the procedural requirements for forfeiture and

exoneration of the bond, do protect the surety.  [Citations.]  Failure to comply with the procedural requirements of setting bail is not among the statutory grounds for exoneration of the bail bond.  [Citations.]  *Failure to comply with the procedural requirements of* Humphrey*, requirements intended to safeguard the defendant's constitutional rights, did not render the subsequently issued bond void.*"  (*Accredited Surety, supra*, 34 Cal.App.5th at pp. 898-899, italics added.)

More recently, our colleagues in the Court of Appeal, Second Appellate District, Division Two, held:  "any noncompliance with *Humphrey* would, at best, render the bail order voidable *as to the defendant, not as to the surety*.  Bail is a function of 'two different contracts between three different parties'—namely, (1) a contract between a criminal defendant and a surety under which the surety posts a bail bond in exchange for the defendant's payment of a premium and his promise to pay the full amount of the bond in the event of his nonappearance, and (2) a contract between the surety and the People under which the surety ' " ' "act[s] as a guarantor of the defendant's appearance in court under risk of forfeiture of the bond." ' " [Citations.]' [Citations.]  If these two contracts form the two legs of this triangle of parties, the underlying criminal prosecution of the defendant by the People is the proverbial hypotenuse.  Much as the three sides of a triangle are connected but still distinct, our Supreme Court has observed that '[w]hile bail bond proceedings occur in connection with criminal prosecutions, they are independent from and collateral to [those] prosecutions . . . .' [Citations.]  [¶]  The independence of bail proceedings from the underlying criminal prosecution is why any noncompliance with *Humphrey* during the prosecution does not affect—let alone eviscerate—the trial court's jurisdiction over the collateral bail proceedings.  *Time and again, courts have ruled that errors in a trial court's setting of bail during the criminal prosecution do not let the surety off the hook in the collateral bail proceedings.*"  (*People v. North River Ins. Co.* (2020) 48 Cal.App.5th 226, 235, italics added.)

8

We note that the California Supreme Court's decision in *In re Humphrey, supra*, 11 Cal.5th 135 addresses neither the validity of a bail bond contract issued following a constitutionally inadequate hearing nor a surety's obligations under the bond once it has been executed.

American Surety asserts that *Accredited Surety* and *North River* "misapprehend the nature of the bail contract," "misinterpret[] the nature of the contractual relationship," and misapply precedent. American Surety asserts that where the bail amount was set in an unconstitutional manner, "the entire contract based upon that order is void as against public policy." According to American Surety, "[w]hen the proper nature of the bail contract is understood neither the defendant, nor the surety that guaranteed the defendant's contract with the State, are liable to the State for a bail debt that was not fixed by a reasonable method." American Surety maintains that a surety cannot waive illegality on behalf of the principal, and the fact that a defendant posts a surety bail does not serve to waive the objection to the court's compliance with constitutional requirements in setting bail.

American Surety's arguments are virtually all addressed to the bail setting process. Despite American Surety's objections, we adhere to *Accredited Surety* and *North River* and conclude that "[n]othing in *Humphrey* or the statutory rules regarding the setting of bail relieves the surety of its obligations under the bond once it has been executed," and American Surety waived such contentions "when it 'assume[d] its obligations . . . at the time of the execution of the bond.' " (*Accredited Surety, supra*, 34 Cal.App.5th at p. 898.)

American Surety seeks, in effect, to reargue *Accredited Surety*, or, at the least, implores us to depart from it and from *North River*. We decline both invitations.

III

*Unconscionability*

American Surety asserts that, even if the bail contracts had been properly formed, it would be unconscionable to enforce them. American Surety asserts that such contracts amount to contracts of adhesion, and that, here, all elements of unconscionability are present.

American Surety did not raise unconscionability in the trial court. We asked the parties to provide supplemental letter briefs addressing whether American Surety forfeited this argument by its failure to do so. (See *Bhatt v. State Dept. of Health Services* (2005) 133 Cal.App.4th 923, 933.)

American Surety asserts we may address its unconscionability argument, raised for the first time on appeal, because it presents purely legal issues based on undisputed facts. County counsel responds that American Surety forfeited the issue of unconscionability by failing to raise it in the trial court. County counsel further asserts that the exception to the forfeiture rule upon which American Surety relies is inapplicable because the issue of unconscionability here is not a purely legal issue but a factual one, the parties did not present any facts in the trial court, and the facts at issue are not "undisputed."

"As a general rule, 'issues not raised in the trial court cannot be raised for the first time on appeal.' [Citation.] On a number of occasions, however, appellate courts have relaxed this rule and have permitted a party to raise belatedly 'a pure question of law which is presented on undisputed facts.' [Citations.] This forgiving approach has been most frequently invoked when 'important issues of public policy are at issue.' " (*Sea & Sage Audubon Society, Inc. v. Planning Com. of the City of Anaheim* (1983) 34 Cal.3d 412, 417; accord, *Bialo v. Western Mutual Ins. Co.* (2002) 95 Cal.App.4th 68, 73.)

"Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion. [Citation.] 'The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' " (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 113 (*Armendariz*).)

" '[U]nconscionability has both a "procedural" and a "substantive" element,' the former focusing on ' "oppression" ' or ' "surprise" ' due to unequal bargaining power, the latter on ' "overly harsh" ' or ' "one-sided" ' results." (*Armendariz, supra*, 24 Cal.4th at p. 114.) To elaborate, " ' " '[p]rocedural unconscionability' concerns the manner in which the contract was negotiated and the circumstances of the parties at that time. [Citation.] It focuses on factors of oppression and surprise. [Citation.] The oppression component arises from an inequality of bargaining power of the parties to the contract and an absence of real negotiation or a meaningful choice on the part of the weaker party." ' " (*Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1570.) "Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. [Citations.] A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to "shock the conscience." ' " (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246.)

" 'The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [Citation.] But they need not be present in the same degree. 'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms

11

themselves.' [Citation.] In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz, supra*, 24 Cal.4th at p. 114.)

Consistent with its position, cases on which American Surety relies in its supplemental briefing address circumstances where the courts found the particular matter of unconscionability in question to be a pure issue of law presented on undisputed facts. (*Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 89, fn. 6 (*Carmona*) [whether a particular provision was unconscionable presented a question of law and the evidence in the case was not disputed]; *D.C. v. Harvard-Westlake School* (2009) 176 Cal.App.4th 836, 868 [regarding unconscionability argument, "[w]e have the discretion to hear a newly raised question of law that can be decided on undisputed facts appearing in the record"].)

However, "unconscionability is, *in the absence of a material factual dispute*, a question of law that may be raised for the first time on appeal." (*Lennar Homes of California, Inc. v. Stephens* (2014) 232 Cal.App.4th 673, 686, citing *Carmona, supra*, 226 Cal.App.4th at p. 89, fn. 6, italics added.) Additionally, "[p]rocedural unconscionability is 'inherently fact-specific.' " (*Prima Donna Development Corp. v. Wells Fargo Bank, N.A.* (2019) 42 Cal.App.5th 22, 42.)

American Surety in its substantive briefing on unconscionability asserts that "each of the elements of unconscionability is present." Among other things, in arguing unconscionability, American Surety raises the codefendants' weak bargaining power, the absence of opportunity for meaningful negotiation, "setting of bail without reference to the defendant's financial abilities or his individual dangerousness," and additional issues addressed to codefendants' weak bargaining power, including dangers presented to defendants in being incarcerated in pretrial detention as opposed to being freed on bail and the effect of pretrial detention on defendants in terms of potential job loss, loss of

income, and impairment of family relationships. American Surety's arguments are based on factual issues regarding the setting of bail and the bail contract that were not presented to the trial court.

We conclude the issue of unconscionability here does not present a purely legal issue based on undisputed facts. The parties presented no evidence in the trial court on the issue of unconscionability of the bail contracts. Thus, we decline to reach the issue, raised for the first time on appeal, as it would be imprudent and unfair for this court to do so.

## DISPOSITION

The trial court's order denying American Surety's motion to set aside summary judgment, discharge forfeiture, and exonerate bail is affirmed. Respondent shall recover costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


                                             _____

                                             HULL, Acting P. J.


We concur:


_____

MAURO, J.


_____

HOCH, J.

13