Filed 3/20/15  Laborers Pacific Southwest Regional Organizing Coalition v. Gomez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LABORERS PACIFIC SOUTHWEST REGIONAL ORGANIZING COALITION, | D065958 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2013-00079562-CU-PT-CTL) |
| DEMETRIO GOMEZ, JR., et al, | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of San Diego County, Lisa C. Schall, Judge.  Reversed with directions.

Reich Adell & Cvitan and Carlos Roberto Perez for Plaintiff and Appellant.

Michael N. Jackman for Defendant and Respondent Julie Su.

No appearance for Defendant and Respondent Gomez.

INTRODUCTION

Laborers Pacific Southwest Regional Organizing Coalition (Coalition) appeals from an order denying its first amended petition to compel arbitration, and subsequent motion to compel arbitration, of a complaint that its former employee, Demetrio Gomez, Jr. (Gomez) filed with the California Labor Commissioner (the Commissioner) to recover unpaid overtime pay, liquidated damages for failure to pay minimum wage, vacation pay, and statutory penalties.[1]  Coalition contends that the court erred in finding the arbitration agreement between Coalition and Gomez to be unconscionable and therefore unenforceable.  We agree and, accordingly, reverse.

II.

FACTUAL AND PROCEDURAL BACKGROUND

Gomez was employed by Coalition from August 4, 2003 to January 3, 2013.  According to Gomez's declaration in opposition to Coalition's motion to compel arbitration, he and approximately 25 other Coalition employees attended a meeting on November 9, 2012 in which two management employees of Coalition presented Gomez and the other employees with an arbitration agreement and told them that they had to sign

_____

[1]     Julie Su, in her capacity as the commissioner and chief of the Division of Labor Standards Enforcement (DLSE), filed a response to Coalition's petition and filed the respondent's brief in this appeal.  Although the Commissioner's response below was filed after Coalition filed its first amended petition to compel arbitration, the response refers to Coalition's "unverified Petition to Compel Arbitration," rather than to the first amended petition.  The Commissioner's response presumably was intended to be to the first amended petition.

the agreement to continue working there.[2] Gomez and the other employees were not given an opportunity to examine the arbitration agreement in detail or consult with counsel before they signed the agreement, and no one from Coalition explained the agreement to them or discussed the effect that it would have on their rights as employees. The employees were told that they had to turn in the signed agreement before they left the meeting.

Gomez signed the arbitration agreement. In his declaration, Gomez averred that he did "not know any of the technical rules of law that are provided for in the arbitration agreement," and that he did not believe that he could "go to arbitration under this agreement without an attorney to help [him] understand what laws apply and how the rules work." He stated that he was unable to afford counsel and lacked sufficient assets to enable him to hire an attorney.

The arbitration agreement requires arbitration of any dispute between Gomez and Coalition relating to his employment. The agreement states, in relevant part: "In the event of any question, claim, controversy, dispute, or disagreement of any kind or character arising out of or during the course of or in any manner relating to the employment relationship, or termination thereof, between the parties, the parties expressly agree to resolve the issue or issues by arbitration in accordance with the Labor Arbitration Rules of the American Arbitration Association in effect on the date of demand of arbitration. The Coalition will provide the employee with a copy of the

---

[2] The arbitration agreement was contained in a new employment manual.

applicable Labor Arbitration Rules, at the Coalition's sole cost and expense, reasonably promptly after receipt of written request for such Labor Arbitration Rules from Employee."

The arbitration agreement further provides: "The claims covered by this Agreement include, but are not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); . . . claims for benefits . . . ; and claims for violation of any Federal, state, or other governmental law, statute, regulation or ordinance . . . ." The arbitration agreement excludes from arbitration only employee claims for workers' compensation or unemployment compensation benefits.

Regarding fees and costs, the arbitration agreement provides: "The Coalition will pay the American Arbitration Association case processing fees, the fees and costs of the Arbitrator and any hearing-associated room rental charges. Except as otherwise provided herein, all other expenses shall be paid by the party incurring them."

After his employment with Coalition ended, Gomez filed a complaint with the Commissioner, seeking to recover unpaid overtime pay, liquidated damages for failure to pay minimum wage, vacation pay, and wages accrued under Labor Code[3] section 203, as a penalty. In November 2013, the Commissioner initiated a "Berman" hearing under

---

[3] All subsequent statutory references are to the Labor Code unless otherwise noted.

section 98 et seq. on Gomez's complaint.[4]  Coalition attended the Berman hearing on the initially scheduled date and requested that the matter be stayed and deferred to arbitration because of the arbitration agreement between Coalition and Gomez.  The hearing officer denied the request because Coalition had not filed a petition to compel arbitration.  The hearing officer also denied Coalition's request for a brief stay to enable it to file a petition to compel arbitration and directed the parties to proceed with the hearing.  However,

---

[4]     The California Supreme Court explained the Berman hearing process as follows: " ' "If an employer fails to pay wages in the amount, time or manner required by contract or by statute, the employee has two principal options.  The employee may seek judicial relief by filing an ordinary civil action against the employer for breach of contract and/or for the wages prescribed by statute.  (§§ 218, 1194.)  Or the employee may seek administrative relief by filing a wage claim with the commissioner pursuant to a special statutory scheme codified in sections 98 to 98.8.  The latter option was added by legislation enacted in 1976 . . . and is commonly known as the 'Berman' hearing procedure after the name of its sponsor.' "  [Citation.]

     " 'Once an employee files a complaint with the Labor Commissioner for nonpayment of wages, section 98, subdivision (a) " 'provides for three alternatives: the commissioner may either accept the matter and conduct an administrative hearing [citation], prosecute a civil action for the collection of wages and other money payable to employees arising out of an employment relationship [citation], or take no further action on the complaint.  [Citation.]' "  [Citation.]  "If the commissioner decides to accept the matter and conduct an administrative hearing, he or she must hold the hearing within 90 days."  [Citation.]  Moreover, prior to holding a Berman hearing or pursuing a civil action, the Labor Commissioner's staff may attempt to settle claims either informally or through a conference between the parties.' "  (*Sonic-Calabasas A., Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1127-1128 (*Sonic II*).)

     We will refer to the California Supreme Court's opinion at 57 Cal.4th 1109 as *Sonic II* to distinguish it from the court's earlier opinion in the same case, *Sonic-Calabasas A., Inc. v. Moreno* (2011) 51 Cal.4th 659 (*Sonic I*).  The United States Supreme Court granted certiorari in *Sonic I*, vacated the judgment, and remanded the case to the California Supreme Court for further consideration in light of *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___ [131 S.Ct. 1740].  (*Sonic II, supra,* 57 Cal.4th at p. 1124.)

5

because it was late in the day, the hearing proceeded for only approximately one hour, after which the hearing officer continued the matter to February 10, 2014.

Coalition filed a petition to compel arbitration on December 2, 2013. On January 6, 2014, Coalition sent a letter to the Commissioner advising the Commissioner that it had filed a petition to compel arbitration in the superior court and that a hearing date on the petition had been set for February 21, 2014. Coalition requested that the Commissioner stay the Berman hearing on Gomez's complaint until its petition to compel arbitration was resolved. In a letter in response to Coalition's request for a stay, the hearing officer denied the request on the ground "that the facts do not meet Division standards for granting a continuance, i.e., 'extreme circumstances,' " and informed Coalition that the Berman hearing would go forward as scheduled on February 10, 2014.

Coalition filed a first amended petition to compel arbitration on January 22, 2014 that added the Commissioner as a respondent. A week later, Coalition filed a "Motion to Compel Arbitration and Stay Proceedings" in which it asked the court to stay the proceeding before the Commissioner.[5] The Commissioner agreed to stay the Berman proceeding until after the date of the hearing on Coalition's petition/motion to compel

---

[5]    It is unnecessary to file a "motion" to compel arbitration after filing a petition to compel arbitration because Code of Civil Procedure section 1290.2 provides that a petition to compel arbitration "shall be heard in a summary way in the manner and upon the notice provided by law for the making and hearing of motions . . . ."

6

arbitration and filed a response to the amended petition.[6] The Commissioner also filed opposition points and authorities to the petition to compel arbitration, in which the Commissioner argued that the subject arbitration agreement was both procedurally and substantively unconscionable. The Commissioner argued that the agreement was procedurally unconscionable because Gomez was given the agreement to sign under threat of discharge, and he was provided neither the opportunity to negotiate nor time to review or seek advice regarding the agreement. The Commissioner argued that the agreement was substantively unconscionable because it failed to provide an accessible arbitral forum in which employees could effectively vindicate their statutory rights.

The trial court denied Coalition's first amended petition and motion to compel arbitration. The court ruled that the arbitration agreement was procedurally unconscionable because the court was "not persuaded" that Coalition had provided Gomez an opportunity to negotiate or reject the agreement. With respect to substantive unconscionability, the court cited *Sonic II, supra,* 57 Cal.4th at page 1143 for the principle that the "focus is on the terms of the agreement and whether those terms are 'unduly harsh' or 'unreasonably one-sided.' " The trial court continued: "The evidence presented through the briefs and at the hearing indicates to the Court that arbitration of [Gomez's] overtime claim does indeed call for legal assistance and it appears Mr. Gomez is unable to achieve that at this time. The costs involved in retaining counsel could have

---

6    The Commissioner later agreed to extend the stay of the Berman hearing pending the outcome of this appeal.

7

the effect of discouraging pursuit of the claim, which is contrary to the state of the law.

In the context of wage disputes, the goal is to 'facilitate[] accessible, affordable resolution

of [such] disputes,' whether that be via a *Berman* hearing or contractual arbitration.

[(*Sonic II, supra,* at p. 1147.)]  Under the circumstances of this case, the Court is not

persuaded that contractual arbitration will meet [*Sonic II*'s] goals."

III.

DISCUSSION

"There is a strong public policy in favor of arbitration.  [Citations.]  [¶]  Under

both the Federal Arbitration Act (FAA) and the California Arbitration Act (CAA),

arbitration agreements are valid, irrevocable and enforceable except upon grounds that

exist for revocation of the contract generally.[7]  [Citations.]  [¶] . . . [¶]  Like any other

contract, an agreement to arbitrate is subject to revocation if the agreement is

unconscionable.  [Citations.]  . . . [¶]  Absent conflicting extrinsic evidence, the validity

of an arbitration clause, including whether it is subject to revocation as unconscionable, is

a question of law subject to de novo review."  (*Serpa v. California Surety Investigations,

Inc.* (2013) 215 Cal.App.4th 695, 701-702, fn. omitted (*Serpa*).)  "The standard of review

where the trial court resolved disputed facts in ruling on a motion to compel arbitration is

---

7       Code of Civil Procedure section 1281.2 provides:  "On petition of a party to an
arbitration agreement alleging the existence of a written agreement to arbitrate a
controversy and that a party thereto refuses to arbitrate such controversy, the court shall
order the petitioner and the respondent to arbitrate the controversy if it determines that an
agreement to arbitrate the controversy exists, unless it determines that: [¶] (a) The right to
compel arbitration has been waived by the petitioner; or [¶] (b) Grounds exist for the
revocation of the agreement."

substantial evidence." (*Peng v. First Republic Bank* (2013) 219 Cal.App.4th 1462, 1468.) The strong public policy in favor of arbitration requires courts to resolve any doubts regarding the arbitrability of a dispute in favor of arbitration. (*Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 686.)

"Unconscionability consists of both procedural and substantive elements. The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citations.] Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US) LLC* (2012) 55 Cal.4th 223, 246 (*Pinnacle*).)[8] "The party resisting arbitration bears the burden of proving unconscionability. [Citations.] Both procedural unconscionability and substantive unconscionability must be shown, but 'they need not be present in the same degree' and are evaluated on ' "a sliding scale." ' [Citation.] '[T]he more substantively oppressive the

_____

[8] The California Supreme Court in *Pinnacle* stated that "[a] contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to "shock the conscience." ' ' " (*Pinnacle, supra,* 55 Cal.4th at p. 246.) The California Supreme Court in *Sonic II* noted that a number of Courts of Appeal have also "used the shock the conscience standard in arbitration cases." (*Sonic II, supra,* 57 Cal.4th at pp. 1159-1160.) However, the *Sonic II* majority used the phrase "unreasonably one-sided" to describe substantive unconscionability (*Id.* at pp. 1125, 1146), and declined to decide "whether these different formulations actually constitute different standards in practice and whether one is more objective than the other . . . ." (*Id.* at p. 1160.) The *Sonic II* court stated: "It is enough to observe that courts, including ours, have used various nonexclusive formulations to capture the notion that unconscionability requires a substantial degree of unfairness beyond 'a simple old-fashioned bad bargain.' " (*Ibid.*)

9

contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' " (*Id.* at p. 247.)

We conclude that the trial court reasonably found that the subject arbitration agreement is procedurally unconscionable based on the uncontroverted statements in Gomez's declaration that he was presented with the arbitration agreement in a meeting and told that he had to sign it to continue working for Coalition, and had to turn in the signed agreement before he left the meeting.[9] "It is well settled that adhesion contracts in the employment context, that is, those contracts offered to employees on a take-it-or-leave-it basis, typically contain some aspects of procedural unconscionability." (*Serpa, supra,* 215 Cal.App.4th at p. 704.)

We further conclude, however, that Gomez has not met his burden of showing substantive unconscionability. The California Supreme Court in *Sonic II* provided guidance to courts in determining whether an arbitration agreement that includes a waiver of the right to a Berman hearing is substantively unconscionable. The *Sonic II* court explained: "Although a court may not refuse to enforce an arbitration agreement imposed on an employee as a condition of employment simply because it requires the employee to bypass a Berman hearing, such an agreement may be unconscionable if it is otherwise unreasonably one-sided in favor of the employer. . . . [T]he Berman statutes confer important benefits on wage claimants by lowering the costs of pursuing their claims and

---

[9]    Coalition filed evidentiary objections to Gomez's declaration, but did not present evidence that controverted the facts stated in Gomez's declaration. The court did not rule on the evidentiary objections.

10

by ensuring that they are able to enforce judgments in their favor. There is no reason why an arbitral forum cannot provide these benefits, and an employee's surrender of such benefits does not necessarily make the agreement unconscionable. The fundamental fairness of the bargain, as with all contracts, will depend on what benefits the employee received under the agreement's substantive terms and the totality of the circumstances surrounding the formation of the agreement." (*Sonic II, supra,* 57 Cal.4th at p. 1125.)

The *Sonic II* court further explained that "the core concern of unconscionability doctrine is the ' " 'absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' " ' [Citations.] The unconscionability doctrine ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as ' " 'overly harsh' " ' [citation], ' "unduly oppressive' " [citation], ' "so one-sided as to 'shock the conscience' " ' [citation], or 'unfairly one-sided' [citation]. All of these formulations point to the central idea that the unconscionability doctrine is concerned not with 'a simple old-fashioned bad bargain' [citation], but with terms that are 'unreasonably favorable to the more powerful party' [citation]." (*Sonic II, supra,* 57 Cal.4th at p. 1145.) Thus, " ' "[t]he paramount consideration in assessing [substantive] unconscionability is mutuality." ' " (*Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 85 (*Carmona*); *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 120 ["[A]rbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims

11

arising out of the same transaction or occurrence or series of transactions or occurrences"].)

We find nothing overly harsh, unduly oppressive, or unfairly one-sided about the arbitration agreement in this case, and the Commissioner does not contend that the agreement is one-sided. There are no provisions in the agreement that give Coalition an unfair advantage over Gomez or create any lack of mutuality. In *Carmona,* the Court of Appeal determined that an arbitration agreement lacked mutuality, and was therefore substantively unconscionable, because it required arbitration for claims of employees, but gave the employer a choice of forums for its claims against employees for breach of a confidentiality agreement. (*Carmona, supra,* 226 Cal.App.4th at p. 86-88.) The *Carmona* court additionally found that the arbitration agreement lacked mutuality because it contained a unilateral fee-shifting provision that required employees to pay any attorney fees that the employer incurred to enforce its rights under the employment agreement, and it effectively created a presumption of irreparable harm to the employer in its claims against employees for breach of the confidentiality agreement, but did not state a reciprocal presumption of harm favoring employees in their claims against the employer. (*Id.* at pp. 88-89.) *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167 (*Mercuro*) similarly illustrates the lack of mutuality that is required to render an arbitration agreement substantively unconscionable. The Court of Appeal in *Mercuro* determined that the arbitration agreement at issue was substantively unconscionable for, among other reasons, lack of mutuality because it required arbitration of claims that

12

employees were most likely to bring against the employer but specifically excluded claims that the employer was most likely to bring against employees.  (*Id.* at pp. 175-176, 179.)  Thus, the arbitration agreements that were determined to be substantively unconscionable in *Carmona* and *Mercuro* were blatantly and unfairly one-sided.  No such patent lack of mutuality is present in the arbitration agreement at issue in this case.

The *Sonic II* court emphasized that "[w]aiver of [the] protections [that a Berman hearing provides] does not necessarily render an arbitration agreement unenforceable, nor does it render an arbitration agreement unconscionable per se.  But waiver of these protections in the context of an agreement that does not provide an employee with an accessible and affordable arbitral forum for resolving wage disputes may support a finding of unconscionability." (*Sonic II, supra,* 57 Cal.4th at p. 1146.)  However, "[i]n evaluating the substantive terms of an arbitration agreement, *a court applying unconscionability doctrine must consider not only what features of dispute resolution the agreement eliminates but also what features it contemplates*." (*Ibid.*, italics added.)

By its terms, the arbitration agreement in this case contemplates providing "a *final and binding* method for [employees] and [Coalition] to use in the event a question, dispute, or disagreement of any kind or character arises . . . regarding the employment relationship between them that they are unable to resolve themselves."  (Italics added.)  Thus, a significant feature of the agreement is that the arbitration decision will be final and not subject to challenge by appeal, as an administrative decision in a Berman proceeding would be.  An additional feature of the arbitration agreement that benefits

13

employees is the provision that Coalition "will pay the American Arbitration Association case processing fees, the fees and costs of the Arbitrator and any hearing-associated room rental charges."  This provision brings the agreement within *Sonic II*'s requirement that "an adhesive arbitration agreement that compels the surrender of Berman protections as a condition of employment [must] provide for accessible, affordable resolution of wage disputes."  (*Sonic II, supra,* 57 Cal.4th at p. 1150.)

As noted above, the trial court based its determination of substantive unconscionability on the finding that "arbitration of [Gomez's] claims [calls] for legal assistance and it appears that Mr. Gomez is unable to achieve that at this time."  The court concluded that "[t]he costs involved in retaining counsel could have the effect of discouraging pursuit of the claim, which is contrary to the state of the law."

The fact that the arbitration agreement does not require Coalition to bear the cost of legal counsel to represent Gomez in the arbitration does not support a finding that the arbitral scheme contemplated by the agreement is substantively unconscionable.  As the California Supreme Court explained in *Sonic II,* "[t]he unconscionability inquiry is not a license for courts to impose their renditions of an ideal arbitral scheme.  Rather, in the context of a standard contract of adhesion setting forth conditions of employment, the unconscionability inquiry focuses on whether the arbitral scheme *imposes costs and risks on a wage claimant that make the resolution of the wage dispute inaccessible and unaffordable, and thereby 'effectively blocks every forum for the redress of disputes,*

14

*including arbitration itself.*' " (*Sonic II, supra,* 57 Cal.4th at pp. 1147-1148, italics added.)

We are aware of no authority supporting the proposition that an employee's having to bear the cost of retaining counsel to represent him or her in the arbitration of a wage claim constitutes imposition of the type of "costs and risks . . . that make the resolution of the wage dispute inaccessible and unaffordable, and thereby 'effectively blocks every forum for the redress of disputes, including arbitration itself.' " (*Sonic II, supra,* 57 Cal.4th at p. 1148.) An arbitration agreement, like the one in the present case, that does not require the employer to provide the employee with counsel in the arbitration of a wage dispute but otherwise provides the employee with "an accessible and affordable arbitral forum for resolving wage disputes" (*id.* at p. 1146) cannot be deemed substantively unconscionable solely because the employee will have to pay for his or her own counsel, if the employee chooses to be represented by counsel.

The Commissioner cites the benefits that a Berman hearing provides to employees as summarized by the *Sonic II* court,[10] and characterizes the trial court's finding of substantive unconscionability based on Gomez's inability to afford counsel in the arbitration as the court's having focused on the employee's right to be represented by the

_____

[10]    Among other benefits, the *Sonic II* court noted that "section 98.4 provides that a wage claimant who is 'financially unable to afford counsel' may be represented by the commissioner in the event the employer appeals and 'shall' be represented by the commissioner if the employee seeks to uphold a Berman hearing award." (*Sonic II, supra,* 57 Cal.4th at p. 1130.)

15

commissioner in an appeal of the Berman hearing decision to superior court.[11] The

Commissioner argues that an arbitration agreement that forces an employee to forfeit that

particular benefit of the Berman procedure "does not provide equivalent protections to a

wage claimant in the arbitration arena, and therefore does not provide the accessible and

affordable process contemplated by the law," and "results in substantive

unconscionability."

As our discussion above indicates, we do not share the Commissioner's view that

Gomez's forfeiture of the right to *possibly* be represented by the Commissioner in an

appeal from a Berman decision renders the arbitration agreement substantively

unconscionable simply because Gomez is unable to afford counsel to represent him in the

arbitration. The *Sonic II* court observed that "there is no single formula for designing an

arbitration process that provides an effective and low-cost approach to resolving wage

disputes. There are potentially many ways to structure arbitration, without replicating the

Berman protections, so that it facilitates accessible, affordable resolution of wage

disputes. [There is] no reason to believe that the specific elements of the Berman statutes

are the only way to achieve this goal or that employees will be unable to pursue their

claims effectively without initial resort to an administrative hearing as opposed to an

adequate arbitral forum." (*Sonic II, supra,* 57 Cal.4th at p. 1147.) The *Sonic II* court

_____

[11]     We fail to see the connection between the court's finding of substantive
unconscionability based on Gomez's inability to afford counsel in the *arbitration* and an
employee's right under section 98.4 to be represented by the commissioner in an *appeal*
of the Berman hearing decision to superior court.

16

expressly held that "[w]aiver of the Berman protections will not, by itself, support a finding of unconscionability where the arbitral scheme at issue provides employees with an accessible and affordable process for resolving wage disputes." (*Id.* at pp. 1147-1148.) The Commissioner's argument that the subject arbitration agreement is substantively unconscionable as applied to Gomez because he is unable to afford counsel is contrary to this principle.[12]

"In sum, unconscionability doctrine does not mandate the adoption of any particular form of dispute resolution mechanism, and courts may not decline to enforce an arbitration agreement simply on the ground that it appears to be a bad bargain or that one party could have done better. Unconscionability doctrine is instead concerned with whether the agreement is unreasonably favorable to one party, considering in context 'its commercial setting, purpose, and effect.' " (*Sonic II, supra,* 57 Cal.4th at p. 1148.)

Bearing in mind the strong public policy in favor of arbitration and the requirement that we resolve any doubts regarding the arbitrability of a dispute in favor of arbitration (*Coast Plaza Doctors Hospital v. Blue Cross of California, supra,* 83 Cal.App.4th at p. 686), we conclude that the Commissioner has not met her burden of showing that the subject arbitration agreement is unreasonably favorable to Coalition and therefore substantively unconscionable. The arbitration agreement in this case satisfies

---

12    Under the Commissioner's reasoning, an arbitration agreement that requires waiver of a Berman hearing would never be enforceable against an employee who shows an inability to afford counsel in the arbitration unless the agreement provides that the employer will pay the cost of the employee's counsel.

*Sonic II*'s requirement of providing employees with an accessible and affordable process for resolving wage disputes. "[T]he fact that arbitration supplants an administrative hearing cannot be a basis for finding [the] arbitration agreement unconscionable." (*Sonic II, supra,* 57 Cal.4th at 1146.) Because the arbitration agreement is not subject to revocation on the ground that it is unconscionable, Coalition's petition to compel arbitration must be granted. (Code Civ. Proc., § 1281.2.)

IV.

DISPOSITION

The order denying Coalition's first amended petition to compel arbitration and motion to compel arbitration and stay proceedings is reversed. The court is directed to enter a new order granting the first amended petition to compel arbitration and motion to compel arbitration, and staying the Berman proceedings before the Commissioner until completion of the arbitration. Coalition is awarded its costs on appeal.


AARON, J.

WE CONCUR:


McCONNELL, P. J.


IRION, J.

18