Filed 7/24/24  Jackson v. Faraday & Future CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARISSA JACKSON,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FARADAY & FUTURE, INC.,<br><br>    Defendant and Appellant. | B328046<br><br>Los Angeles County<br>Super. Ct. No. 22STCV34852 |

APPEAL from an order of the Superior Court of Los Angeles County, Michael L. Stern, Judge.  Affirmed.

Vedder Price, Sheryl L. Skibbe, Charlie Y. Wang and Gabrielle Mercurio for Defendant and Appellant.

Diana Gevorkian Law Firm and Diana Gevorkian for Plaintiff and Respondent.

Marissa Jackson sued her employer, Faraday & Future, Inc. (Faraday), for various employment-related claims. Faraday moved to compel arbitration under an agreement Jackson signed as a condition of her employment. The trial court concluded the agreement is unconscionable and refused to enforce it. The court found Faraday had wrongly informed Jackson the agreement was substantially the same as the parties' prior arbitration agreement. Contrary to its representation, Faraday had made significant substantive changes to the prior agreement, almost all of which worked to its benefit. The court further concluded the agreement's provisions concerning remedies, discovery, and confidentiality were substantively unconscionable and rendered the entire agreement unenforceable. On appeal, Faraday argues there is insufficient procedural and substantive unconscionability to render the agreement unenforceable. We disagree and affirm the trial court's order.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The 2016 Agreement*

Faraday describes itself as a "start-up technology company" that develops and manufactures electric vehicles. Faraday hired Jackson in 2016 as a Systems Administrator in its IT Department. It required Jackson to sign an at-will employment contract as a condition of her employment. The employment contract included an arbitration clause, which we refer to as the 2016 Agreement.

Under the 2016 Agreement, Jackson agreed to arbitrate any claims related to her employment, whether brought on an individual, group, or class basis. In return, Faraday agreed to arbitrate any disputes it had with Jackson. Arbitration would

be administered by the Judicial Arbitration & Mediation Services (JAMS), using the JAMS Employment Arbitration Rules & Procedures (the JAMS Rules). Faraday would cover all costs of the arbitration, except the filing fee up to the amount Jackson would have had to pay had she filed a complaint in court.

The 2016 Agreement required the arbitrator to conduct the arbitration in accordance with California substantive and procedural law, including the California Arbitration Act (CAA; Code Civ. Proc., § 1280 et seq.).[1] In the event of a conflict between the JAMS Rules and California law, California law would control. The arbitrator would have the power to award all remedies available under applicable law. In addition, the prevailing party would be entitled to attorney fees, except as prohibited by law. The agreement expressly did not prohibit Jackson from pursuing claims with administrative bodies and governmental agencies authorized to enforce or administer employment laws.

### 2. *The 2018 Agreement*

In September 2018, Faraday's Human Resources (HR) department sent Jackson an email with the subject, "Faraday Future Employee Handbook." The email "introduce[d] the Faraday Future Employee Handbook" containing some of the company's policies and procedures. The email also introduced a "revised version of the Company's Arbitration Agreement." We refer to this arbitration agreement as the 2018 Agreement. According to the email, the 2018 Agreement "isn't new, but simply a revised version of what you've likely already signed.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

3

This revised version is a little clearer and is being rolled out to all current and new employees so that everyone will be on the same page."

Like the 2016 Agreement, the 2018 Agreement requires Jackson and Faraday to arbitrate their claims using JAMS. However, the 2018 Agreement is significantly longer than the 2016 Agreement and includes many new terms. Among other changes, the 2018 Agreement is governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.), does not incorporate the CAA, limits Jackson's right to seek administrative remedies, requires "[a]ll aspects of the arbitration" be kept confidential, generally requires the parties to bear their own attorney fees, and prohibits non-PAGA representative and class actions.

Faraday instructed Jackson to "read through the Handbook and revised Arbitration Agreement and then sign the two documents near the end." It asked Jackson to sign the documents within 11 days of receiving the email. Faraday listed a schedule of "short sessions" at which its HR and Legal departments would "highlight certain policies that may be of use to you while at work and provide answers to some of the most commonly asked questions." Jackson electronically signed the 2018 Agreement about a week after receiving it.

3.    *Jackson's complaint*

In November 2022, Jackson filed a complaint against Faraday in the superior court. She alleged Faraday committed violations of the Federal Employment and Housing Act (FEHA), including sex discrimination, race/national origin discrimination, and retaliation. Jackson also alleged Faraday failed to pay wages, failed to provide meal and rest periods, failed to provide

an itemized wage statement, engaged in unfair business practices, and made intentional misrepresentations.

In response to Jackson's complaint, Faraday filed a petition to compel arbitration and stay the court action. It argued Jackson's claims were covered by the 2018 Agreement, which required her to submit them to arbitration.

In support of its petition, Faraday submitted a declaration from its Vice President of Human Resources, Nan Yang, whom it hired in 2019. Despite joining the company after the relevant events, Yang recounted the circumstances under which Jackson signed both the 2016 and 2018 agreements (as we have summarized them above).

Jackson opposed Faraday's petition, primarily on the ground the 2018 Agreement was unconscionable and unenforceable. On the issue of procedural unconscionability, Jackson argued the 2018 Agreement was presented on a take-it-or-leave-it basis, Faraday misrepresented its implications, and the 2018 Agreement directed her to a non-JAMS website that lacked the arbitration rules. As to substantive unconscionability, Jackson argued the 2018 Agreement excluded claims Faraday was more likely to bring, imposed costs she would not bear in court, limited informal and formal discovery, failed to grant the arbitrator power to compel nonparty discovery, and limited administrative remedies.

Jackson attached her own declaration to the opposition. According to the declaration, after reading Faraday's email, Jackson believed the 2018 Agreement was a "routine personnel form" that did not contain new terms. Jackson understood it was "just a clearer and therefore a better version of the arbitration agreement" she signed in 2016. Jackson was surprised when

she learned, during litigation, the 2018 Agreement included new terms that were less favorable to her.

In its reply brief, Faraday argued there was no procedural unconscionability because Jackson had ample time to sign the 2018 Agreement, did not try to negotiate its terms, and did not object to anything within it. Faraday asserted Jackson must not have read the 2018 Agreement, otherwise she would have known it included new terms. Faraday seemed to acknowledge the web address it listed for JAMS was not accurate, but it argued that point was irrelevant because it provided Jackson a copy of the JAMS Rules along with the 2018 Agreement.

As to Jackson's arguments regarding substantive unconscionability, Faraday asserted the 2018 Agreement was mutual and fair, and it did not impose any additional costs on Jackson. Faraday argued the confidentiality provision was appropriate, the 2018 Agreement allowed adequate discovery (including nonparty discovery upon agreement by the parties), and Jackson was free to seek administrative remedies.

The trial court determined the 2018 Agreement was unenforceable and refused to compel arbitration. The court explained the 2018 Agreement was procedurally unconscionable because Jackson "was told that the new agreement was not different than the first agreement, just clearer. It was not. She was directed to the wrong web page for arbitration rules. She did not have the ability, nor was she given the opportunity to compare the two agreements. Moreover, she was [not] given the chance to decline to sign the new agreement." The court also found the 2018 Agreement was substantively unconscionable "[g]iven the one-sided injunctive relief, [and the] limits on

discovery and remedies detailed in the subject arbitration agreement."

Faraday timely appealed.

## DISCUSSION

### 1. *Applicable law and standard of review*

Under both California and federal law, a written arbitration agreement is "valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." (§ 1281; see also 9 U.S.C. § 2 [similar].) "California law, like federal law, favors enforcement of valid arbitration agreements." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97 (*Armendariz*).) Nevertheless, a trial court may refuse to enforce an arbitration agreement "based on general contract law principles," including if the agreement is unconscionable. (*Id.* at p. 99.) Unconscionability has a procedural and substantive element, both of which must be present for a court to refuse to enforce an agreement. (*Id.* at p. 114.)

" 'On appeal from the denial of a motion to compel arbitration, "we review the arbitration agreement de novo to determine whether it is legally enforceable, applying general principles of California contract law." ' [Citation.] Thus, unconscionability is a question of law we review de novo." (*Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 82 (*Carmona*).) However, we review the trial court's factual findings supporting its order for substantial evidence. (*Villareal v. LAD-T, LLC* (2022) 84 Cal.App.5th 446, 456.)

7

## 2. *The 2018 Agreement has an extraordinarily high degree of procedural unconscionability*

"[P]rocedural unconscionability requires oppression or surprise." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 247.) A common form of procedural unconscionability involves the use of a contract of adhesion. A contract of adhesion is " 'a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' " (*Armendariz, supra*, 24 Cal.4th at p. 113.) "Arbitration contracts imposed as a condition of employment are typically adhesive." (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 126 (*OTO*).)

The use of a contract of adhesion establishes only a minimal degree of procedural unconscionability. (*Gatton v. T-Mobile USA, Inc.* (2007) 152 Cal.App.4th 571, 585.) Nevertheless, our Supreme Court has counseled that, when an employment contract is adhesive in nature, the court must be " 'particularly attuned' " to the employee's claim of substantive unconscionability. (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1245–1246 (*Baltazar*).) Where a contract of adhesion also involves " 'surprise or other sharp practices,' " the court must subject the substantive terms to an even higher degree of scrutiny. (*Ibid.*)

Here, the trial court concluded the 2018 Agreement is procedurally unconscionable because it is a contract of adhesion, Faraday misrepresented the extent of the changes to the parties' existing agreement, and Faraday directed Jackson to the wrong web address for the arbitration rules. We consider each finding in turn.

8

a.     *Contract of adhesion*

Faraday does not meaningfully dispute the 2018 Agreement is a contract of adhesion, nor could it. As Faraday seems to concede, it presented the 2018 Agreement to Jackson as a condition of her employment. The record also shows Faraday directed Jackson to sign the contract without giving her any indication it was willing to negotiate the terms. Under these circumstances, it is reasonable to infer the terms were nonnegotiable. Accordingly, there is sufficient evidence the 2018 Agreement is a contract of adhesion.

b.     *Faraday's misrepresentations*

According to Jackson's declaration, at the time she signed the 2018 Agreement, she understood it to contain essentially the same terms as the 2016 Agreement, but "just a clearer and therefore a better version" of it. Jackson's understanding was reasonable given the manner in which Faraday presented the 2018 Agreement to her. Faraday introduced the agreement through an email in which it described the 2018 Agreement as not "new." Instead, according to the email, it is "simply a revised version" of the existing arbitration agreement Jackson had already signed. The only revision Faraday identified was that the 2018 Agreement is a "little clearer." This strongly implied any revisions to the parties' preexisting arbitration agreement —the 2016 Agreement—were formal, rather than substantive. It conveyed that, although the language may have changed, the substance remained the same.

Faraday's characterization of the 2018 Agreement was wildly inaccurate and misleading. Apart from the general subject matter and the use of JAMS, the 2016 Agreement and 2018 Agreement share almost nothing in common. The 2018

9

Agreement is more than twice as long as the 2016 Agreement, and it appears Faraday drafted it entirely from scratch. And contrary to Faraday's suggestions in its email to Jackson, those additional words do not simply clarify the preexisting agreement. Instead, Faraday made significant substantive changes to the parties' agreement, nearly all of which worked to its benefit. We highlight some of those changes here.

*Administrative remedies.* The 2016 Agreement expressly allowed Jackson to pursue administrative remedies. Faraday removed that language from the 2018 Agreement. In its place, the 2018 Agreement expressly prohibits Jackson from receiving administrative remedies in addition to arbitration remedies, and it states the arbitrator's award is the sole remedy for any covered claim to the extent permitted by law.

*Class claims.* The 2016 Agreement allowed Jackson to bring claims on an individual, class, or group basis. With the exception of PAGA claims, the 2018 Agreement requires Jackson to bring her claims on an individual basis.

*Confidentiality.* The 2016 Agreement did not include a confidentiality clause. The 2018 Agreement, in contrast, generally requires "[a]ll aspects of the arbitration" be kept confidential.

*Attorney fees.* The 2016 Agreement required the arbitrator to award attorney fees to the prevailing party, except as prohibited by law. In contrast, the 2018 Agreement provides, "[u]nless otherwise ordered by the arbitrator, each Party shall pay its own attorney's fees . . . ."

*Discovery.* The 2016 Agreement required the arbitrator to apply California substantive and procedural law, including the Code of Civil Procedure. Accordingly, the parties were

entitled to discovery if "relevant to the subject matter involved in the pending action." (§ 2017.010.) The 2018 Agreement requires the arbitrator to apply a significantly more limited standard for discovery. It states the arbitrator must decide whether discovery is warranted based on the "reasonable need for the requested information, the availability of other discovery options, and the burdensomeness of the request on the opposing Parties and the witness." Moreover, as we discuss in detail below, the 2018 Agreement significantly limits the parties' ability to obtain nonparty discovery.

*Provisional relief.* The 2016 Agreement expressly incorporated the CAA, which allows either party to ask a court for provisional relief related to a claim that is subject to arbitration. (See § 1281.8.) As we discuss in detail below, the 2018 Agreement limits such relief to Faraday's claims related to its intellectual property and proprietary information.

*Filing fees.* Both the 2016 Agreement and the 2018 Agreement require Jackson to pay the filing fees for any claims she initiates in arbitration. The 2016 Agreement capped those fees at the amount Jackson would have had to pay to file the claims in court. The 2018 Agreement removed that cap.

Faraday seems to concede it failed explicitly to disclose these changes to Jackson. Nevertheless, it suggests its failure to do so does not constitute procedural unconscionability because the changes would have been obvious to Jackson had she simply read the 2018 Agreement and compared it to the 2016 Agreement. It contends there is no evidence in the record to support the trial court's finding that Jackson "did not have the ability, nor was she given the opportunity to compare" the two agreements.

11

Contrary to Faraday's arguments, substantial evidence supports the trial court's finding. Jackson submitted a declaration asserting she is not a lawyer and did not understand the 2018 Agreement was less favorable to her. Faraday presented no evidence to the contrary. Nor did it present evidence that it provided Jackson a copy of the 2016 Agreement —either at the time she signed it or when Faraday asked her to sign the 2018 Agreement—or that it informed her she could request access to it. On this record, the trial court reasonably could have found Jackson lacked both the ability and opportunity to compare the agreements.

Even if Faraday had allowed Jackson to compare the agreements, it would not have cured the procedural unconscionability caused by its misrepresentations. Faraday drafted the agreements using drastically different language and form. The 2016 Agreement is contained within a much larger document, incorporates some of its most important terms from statutory provisions, and is replete with legalese. In contrast, the 2018 Agreement is a standalone document, states most of its terms explicitly, and does so in relatively plain language. These stylistic changes are a welcome improvement, and we do not mean to criticize Faraday in any way for adopting them. However, they also work to mask the significant differences between the two agreements. Even for a trained lawyer, it would be difficult to appreciate the differences simply by reading the documents. For someone like Jackson, who lacks any legal training, it would be nearly impossible. (See *Gentry v. Superior Court* (2007) 42 Cal.4th 443, 471 (*Gentry*) [even " ' "experienced but legally unsophisticated

businessmen may be unfairly surprised by unconscionable contract terms" ' "].)

Nor was it enough for Faraday to give Jackson 11 days to sign the 2018 Agreement and make its staff available to answer questions about the contract's terms. Again, we do not mean to criticize Faraday's efforts in this regard. The problem, however, is that Faraday effectively rendered those efforts meaningless when it implied the 2018 Agreement simply clarified the terms of the 2016 Agreement. By doing so, Faraday led Jackson to believe erroneously the 2018 Agreement was substantially the same as the 2016 Agreement. Based on that belief, Jackson had no reason to take advantage of the resources Faraday provided to her. Nor did she have any reason to seek advice on her own. (See *Gentry, supra*, 42 Cal.4th at p. 471 ["it is unrealistic to expect anyone other than higher echelon employees to hire an attorney to review what appears to be a routine personnel document"].)

c.      *The wrong JAMS web address*

The 2018 Agreement asserts "the arbitration will be conducted in accordance with the employment Arbitration Rules of JAMS in effect at the time the demand is submitted to JAMS." It states the applicable rules "are provided here for reference" and are also available at "www.jamsadr.org." However, the website at www.jamsadr.*org* has no apparent connection to JAMS or to arbitration. The JAMS website is instead available at www.jamsadr.*com*.

Faraday seems to concede its error. Nevertheless, it argues the error does not reflect procedural unconscionability because the undisputed evidence shows it attached a copy of the JAMS Rules to the 2018 Agreement. Therefore, Faraday argues,

13

Jackson was able to review the applicable rules and understand the full ramifications of her decision to agree to arbitration.

There are several problems with Faraday's argument. First, it is not clear whether Faraday actually attached the JAMS Rules to the 2018 Agreement. The 2018 Agreement states the JAMS Rules are "provided here for reference," and Yang asserted Faraday gave Jackson "the Arbitration Agreement with the 2014 JAMS Employment Arbitration Rules & Procedures." However, the version of the 2018 Agreement Faraday submitted in support of its petition to compel arbitration did not include those rules. Nor did Faraday submit a copy of the rules after Jackson raised the issue in her opposition brief.

Even assuming Faraday attached the JAMS Rules to the 2018 Agreement, it would not have cured the procedural unconscionability. The 2018 Agreement states both that the JAMS Rules are "provided here for reference," and also that the applicable rules will be determined at the time a demand for arbitration is submitted. Absent a clarification that the attached rules were subject to change, these provisions seem to contradict each other. Regardless, because Faraday directed Jackson to the wrong web address for JAMS, it failed to provide her any way to determine whether the rules it attached remained effective.

Faraday asserts any procedural unconscionability related to the JAMS Rules is irrelevant because Jackson does not complain about the substance of those rules. It points to *Baltazar*, *supra*, 62 Cal.4th 1237, in which the Supreme Court declined to find an arbitration agreement was unconscionable because it did not include the applicable arbitration rules. The court explained the failure to attach the rules "might have

force if [the plaintiff's] unconscionability challenge concerned some element of the [arbitration] rules of which she had been unaware when she signed the arbitration agreement. But her challenge . . . has nothing to do with the [arbitration] rules." (*Id.* at p. 1246.)

Like the plaintiff in *Baltazar*, Jackson does not directly challenge the substance of the JAMS Rules. However, unlike the agreement at issue in that case, the procedural unconscionability here goes beyond a simple failure to attach the applicable rules. As discussed above, the 2018 Agreement contains contradictory language concerning which rules would actually apply to an arbitration. It then compounds the confusion by directing Jackson to a wholly unrelated and irrelevant website to find those rules. These aspects substantially increase the oppression and distinguish this case from *Baltazar*. (See *Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 245 [the "level of oppression is increased" when an employer fails to identify clearly which rules govern]; see also *Harper v. Ultimo* (2003) 113 Cal.App.4th 1402, 1406 [a contract is oppressive when the weaker party "is forced to go to another source to find out the full import of what he or she is about to sign—and must go to that effort *prior* to signing"].)

3. *The 2018 Agreement contains substantively unconscionable terms*

The trial court found the 2018 Agreement is substantively unconscionable because it contains unfair and one-sided limitations on remedies, injunctive relief, and discovery. In particular, the court noted the 2018 Agreement limits Jackson's administrative remedies, allows Faraday to seek injunctive relief in court, deprives the arbitrator of authority to compel nonparty

15

discovery, and includes a strict confidentiality clause that limits informal discovery.  Faraday argues none of those aspects of the 2018 Agreement constitute substantive unconscionability. We consider each in turn.

a.  *Limits on administrative remedies*

The 2016 Agreement expressly did not "prohibit [Jackson] from pursuing an administrative claim with a local, state, or federal administrative body or government agency . . . ."  The 2018 Agreement mentions administrative claims, but it does not expressly allow Jackson to pursue them.  Instead, it states if an administrative claim is filed, either party has the right to obtain a stay of the arbitration pending the agency's resolution of the claim.  It then clarifies that "under no circumstances can there be a duplicative award from the administrative agency and the arbitrator.  To the extent permitted by law, the arbitrator's award is the sole remedy for any covered claim."

The parties seem to agree these provisions severely restrict Jackson's right to file administrative claims or seek administrative remedies.  According to Faraday, the 2018 Agreement allows Jackson to file an administrative claim "that she is required to exhaust before bringing the claim in court." However, if "an agency determination is not required, the [2018] Agreement provides that arbitration will be the sole forum for resolution of any covered claim."

As Faraday also seems to concede, the 2018 Agreement's limitation on administrative claims precludes Jackson from pursuing a Berman hearing.[2]  A so-called Berman hearing is

---

[2]  For the first time in its reply brief, Faraday argues the 2018 Agreement does not require Jackson to waive her right to a Berman hearing or other administrative remedies.  Faraday

16

an administrative procedure available to employees to redress an employer's failure to pay wages. (See *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1127–1128 (*Sonic*).) The procedure "include[s] various features designed to lower the costs and risks for employees in pursuing wage claims, including procedural informality, assistance of a translator, use of an expert adjudicator who is authorized to help the parties by questioning witnesses and explaining issues and terms, and provisions on fee shifting, mandatory undertaking, and assistance of the Labor Commissioner as counsel to help employees defend and enforce any award on appeal." (*Id*. at p. 1146.)

The waiver of a Berman hearing "does not necessarily render an arbitration agreement unenforceable, nor does it render an arbitration agreement unconscionable per se. But waiver of these protections in the context of an agreement that does not provide an employee with an accessible and affordable arbitral

---

asserts Jackson quotes out of context language from the 2018 Agreement to support her claim that arbitration is the " 'sole forum' " for the resolution of disputes. However, in its opening brief on appeal, Faraday itself asserted, if "an agency determination is not required, the [2018] Agreement provides that arbitration will be the sole forum for resolution of any covered claim." To the extent Faraday argues otherwise in its reply brief, we consider the argument forfeited. (See *Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11 ["Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant."]; *Nordstrom Com. Cases* (2010) 186 Cal.App.4th 576, 583 ["points raised for the first time in a reply brief on appeal will not be considered"].) In any event, we agree with the interpretation Faraday proposed in its opening brief.

forum for resolving wage disputes may support a finding of unconscionability." (*Sonic, supra,* 57 Cal.4th at p. 1146.) The "arbitral scheme must offer employees an effective means to pursue claims for unpaid wages, and not impose unfair costs or risks on them or erect other barriers to the vindication of their statutory rights." (*OTO*, *supra*, 8 Cal.5th at pp. 133–134.)

 *OTO, supra*, 8 Cal.5th 111, is instructive. In that case, the Supreme Court considered whether an arbitration agreement that waived an employee's right to a Berman hearing was unconscionable. To decide the issue, the court explained, it needed to compare what the employee gave up with what he received in return. (*Id*. at p. 136.) By waiving his right to a Berman hearing, the employee gave up a speedy, informal, and affordable method for resolving wage disputes, something he could have completed without hiring an attorney. (*Id*. at pp. 132, 134.) In return, he received "access to a formal and highly structured arbitration process that closely resembled civil litigation," which likely would be more complicated and costly for the employee. (*Id*. at pp. 135–136.) The court noted, unlike a Berman hearing, arbitration would require a formal complaint, responses to discovery and dispositive motions, compliance with the rules of evidence, and a court petition to reduce the award to an enforceable judgment. (See *id*. at pp. 131–132.)

 The court then considered whether this trade-off rendered the agreement unenforceable, taking into consideration the circumstances under which the employee agreed to it. The court noted the employer presented the agreement to the employee as a condition of his employment, but without explaining its terms or providing sufficient time to review it. (*OTO, supra*, 8 Cal.5th

18

at p. 127.) Under those circumstances, the court observed, it is "virtually impossible to conclude that [the employee] knew he was giving up his Berman rights and voluntarily agreeing to arbitration instead." (*Id*. at p. 129.) Because of the "unusually coercive setting in which this bargain was entered," the court concluded the waiver of a Berman hearing was "sufficiently one[-]sided as to render the agreement unenforceable." (*Id*. at pp. 136–137.)

Like the employee in *OTO*, Jackson gave up her right to a speedy, informal, and affordable method for resolving wage disputes. In return, she received an arbitration procedure that is likely to be more complicated and costly. Although the procedure contemplated by the 2018 Agreement is not as complicated as in *OTO*, it is nevertheless significantly more complicated than a Berman hearing. Unlike a Berman hearing, the 2018 Agreement may require Jackson to respond to dispositive motions, comply with discovery orders, and seek enforcement of an award in court. Given the relative complexity of these procedures, Jackson would be at a significant disadvantage if she were to represent herself.

Arbitration also is likely to be significantly more costly for Jackson than a Berman hearing. The agreement in *OTO* incorporated section 218.5, subdivision (a), which awards reasonable attorney fees and costs to a prevailing employee. The Supreme Court held, although this provision may have mitigated some financial burden, it is still less favorable for an employee than a Berman hearing. (*OTO, supra,* 8 Cal.5th at pp. 135–136.) The 2018 Agreement seems to be even less favorable for Jackson, as it requires her to bear her own attorney fees unless "otherwise ordered by the arbitrator." Under this provision, it would seem Jackson would not be entitled to her

19

attorney fees, even if she were to prevail on her claims. At the very least, her entitlement to attorney fees is more uncertain than in *OTO* and would likely require additional litigation to resolve.

Although the trade-off in this case is similar to the one in *OTO*, that fact alone does not render the limit on administrative remedies unenforceable. (See *Sonic, supra,* 57 Cal.4th at p. 1146.) Instead, we must determine whether the trade-off is sufficiently one-sided in light of the circumstances under which Jackson agreed to it. (*Ibid*.) We address that issue later in the opinion.

b.      *Limits on injunctive relief*

The 2018 Agreement states, "if either party has a reasonable basis to believe the other party has breached any of the obligations to each other concerning" proprietary information and intellectual property, "either Party may, in addition to pursuing arbitration of the claims for such breach, also seek a temporary restraining order or preliminary injunction . . . in any state or federal court . . . to protect such information."

Faraday argues the trial court wrongly believed this provision allowed it to litigate some of its claims in federal court, rather than in arbitration. Faraday also argues the trial court erroneously characterized the provision as one-sided. Instead, Faraday asserts, the provision grants both parties the same right to seek provisional relief related to certain types of claims.

Contrary to Faraday's contentions, it is not apparent the trial court misinterpreted the 2018 Agreement. While summarizing Jackson's arguments, the court noted the 2018 Agreement "allows Faraday to bring injunctive relief claims in federal court." Although lacking certain details, the court's statement is nevertheless accurate. The 2018 Agreement plainly

20

states, "in addition to pursuing arbitration" of certain claims, either party may "seek a temporary restraining order or preliminary injunction . . . in any state or federal court . . . ."

The court also correctly determined the provision is unfairly one-sided. "Although parties are free to contract for asymmetrical remedies and arbitration clauses of varying scope, . . . the doctrine of unconscionability limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party without accepting that forum for itself." (*Armendariz, supra*, 24 Cal.4th at p. 118.)

Here, although the preliminary relief provision facially applies to both parties, in practice, it benefits only Faraday. When Faraday hired Jackson, she signed a document stating she did not own or have an interest in any "proprietary information or intellectual property rights." There is nothing in the record to suggest Jackson's disclosure was inaccurate, or that she acquired proprietary information or intellectual property at some point after she signed the document. In contrast, Faraday concedes it possess valuable intellectual property rights.

Given this disparity, the 2018 Agreement effectively exempts from arbitration certain aspects of claims Faraday might bring against Jackson, while mandating Jackson arbitrate all aspects of every claim she might bring against Faraday. Courts "have repeatedly found this type of one-sided provision —where the employer exempts claims only it would bring from arbitration while restricting any employee claims to arbitration —to be substantively unconscionable." (*Carmona, supra*, 226 Cal.App.4th at p. 87.) We do the same.

Faraday's reliance on *Baltazar, supra,* 62 Cal.4th 1237, is misplaced. In *Baltazar*, the California Supreme Court rejected

21

an employee's argument that an arbitration agreement was substantively unconscionable because it expressly permitted the parties to seek injunctive relief during the pendency of the arbitration. (*Id*. at pp. 1246–1247.) The employee argued the provision improperly favored the employer because it had a greater interest in protecting trade secrets and other confidential information. (*Ibid*.) The high court disagreed, explaining the provision did nothing more than recite the procedural protections already secured by section 1281.8, subdivision (b) (section 1281.8(b)). (*Baltazar*, at p. 1247.) As the court noted, "an arbitration agreement is not substantively unconscionable simply because it confirms the parties' ability to invoke undisputed statutory rights." (*Id*. at pp. 1247–1248.)

Here, unlike in *Baltazar,* the parties' agreement does not simply confirm section 1281.8(b). To the contrary, it significantly limits their respective rights under it. Section 1281.8(b) states a "party to an arbitration agreement may file in [ ] court . . . an application for a provisional remedy in connection with an arbitrable controversy." (§ 1281.8, subd. (b).) In other words, it allows any party to seek preliminary relief in court related to any arbitrable claim. The 2018 Agreement, in contrast, limits that right to claims related to proprietary information and intellectual property. Moreover, because Jackson does not possess any proprietary information or intellectual property, only Faraday may exercise that right.

Faraday contends, because of the significance of intellectual property to its core business operations, it should be entitled to an " 'extra margin of safety based on legitimate business needs.' " (See *Baltazar, supra*, 62 Cal.4th at p. 1250.) We acknowledge Faraday has a legitimate business need to protect its intellectual

property, including by allowing itself to seek preliminary relief in court. However, Faraday fails to explain what business need required it simultaneously to remove Jackson's right to seek such relief related to her claims. The 2016 Agreement incorporated section 1281.8(b), which allowed both parties to seek injunctive relief related to all their claims. Faraday has not provided any explanation for why it removed that provision from the 2018 Agreement. Nor has it suggested any comparable benefit Jackson received in return for giving up her right to seek preliminary relief in court.

      c.    *Limits on nonparty discovery*

The 2016 Agreement granted the parties the right to obtain discovery from nonparties and granted the arbitrator the power to enforce that right. It did so by expressly incorporating the CAA. Under section 1283.05, subdivision (a) of the CAA, parties to arbitration have the right to obtain discovery as provided in the Civil Discovery Act (§ 2016.010 et seq.), which includes the right to obtain discovery from nonparties. (*Berglund v. Arthroscopic & Laser Surgery Center of San Diego, L.P.* (2008) 44 Cal.4th 528, 535.) The statute also grants arbitrators the power to enforce discovery orders that are generally comparable to those of a judge in a civil action in superior court. (*Ibid.*; see § 1283.05, subd. (b).)

Faraday seems to concede it declined to incorporate any part of the CAA into the 2018 Agreement, either explicitly or implicitly. By failing to do so, Faraday removed the arbitrator's authority under section 1283.05 to compel nonparties to comply with its discovery orders, severely limiting the parties' ability to conduct that type of discovery. (See § 1283.1, subd. (b) [generally, the provisions in section 1283.05 apply only if the parties agree

23

to them]; *Aixtron, Inc. v. Veeco Instruments Inc.* (2020) 52 Cal.App.5th 360, 396 (*Aixtron*) ["to determine whether the arbitrator had the authority to order discovery under the CAA, we must determine whether [the parties] provided that authority through their arbitration agreement"].)  This limitation on nonparty discovery would severely hinder Jackson's ability to arbitrate FEHA claims.  (See *Murrey v. Superior Court* (2023) 87 Cal.App.5th 1223, 1249 [" 'Employment disputes are factually complex, and their outcomes "are often determined by the testimony of multiple percipient witnesses, as well as written information about the disputed employment practice." ' "].)  As such, it is substantively unconscionable.  (See *Ramirez v. Charter Communications, Inc.* (July 15, 2024, S273802) __ Cal.4th __ [2024 WL 3405593, at *11] (*Ramirez*) ["an arbitration agreement required as a condition of employment must generally permit employees sufficient discovery to adequately arbitrate any statutory claims"].)

Faraday argues "[n]othing in the [2018] Agreement prohibits the arbitrator from compelling third party discovery." While true, it does not follow that the parties must have intended to grant the arbitrator such power.  At most, the absence of an explicit grant or prohibition creates an ambiguity.  That ambiguity is largely resolved by the fact Faraday removed from the 2018 Agreement language incorporating section 1283.05 and failed to replace it with anything comparable.  Faraday's editorial choices provide strong evidence it intended to limit the arbitrator's authority to compel nonparty discovery.  (See *Brown v. Goldstein* (2019) 34 Cal.App.5th 418, 432 [courts may look to extrinsic evidence to interpret an agreement when a material

24

term is ambiguous].)  Faraday offers no evidence to suggest otherwise.

Faraday alternatively argues the 2018 Agreement granted the arbitrator the authority to compel nonparty discovery by incorporating the JAMS Rules.[3]  It points to rule 17(e) of the current version of those rules, which went into effect in 2021. Rule 17(e) states the "Parties may take discovery of third parties with the approval of the arbitrator."

Because rule 17(e) went into effect after Jackson signed the 2018 Agreement, it does not help Faraday.  (See *Subcontracting Concepts (CT), LLC v. De Melo* (2019) 34 Cal.App.5th 201, 212 [when considering substantive unconscionability, "we review the arbitration clause for substantive unconscionability at the time the agreement was made"].)  In fact, to the extent rule 17(e) has any relevance, it does the opposite.  As Faraday concedes, neither rule 17(e) nor anything comparable to it existed at the time Jackson signed the 2018 Agreement.  That Faraday nevertheless elected not to include a provision related to nonparty discovery provides strong support for our conclusion that Faraday did not intend for the 2018 Agreement to grant the parties or the arbitrator such power.

Faraday's reliance on the JAMS Rules fails for another reason.  Although rule 17(e) grants the parties the right to take nonparty discovery, it does not grant the arbitrator any meaningful power to enforce that right.  As the court in *Aixtron, supra*, 52 Cal.App.5th 360, explained when it rejected a similar

---

[3]     At Faraday's request, we take judicial notice of the current version of the JAMS Employment Arbitration Rules & Procedures.  (See Evid. Code, § 452, subd. (h).)

argument, "arbitration and the application of JAMS Rules obtain their legal force based on party consent as reflected in the terms of the arbitration agreement or statutes that authorize limited discovery in arbitration." (*Id.* at p. 404.)  Because nonparties have not consented to be bound by the JAMS Rules, absent some sort of statutory provision making the rules effective, they have no power over nonparties.  (*Ibid*.)  Here, Faraday fails to point to any statutory authority that would require nonparties to comply with the JAMS Rules.  Accordingly, an arbitrator would be powerless to enforce rule 17(e) against them.

We reject Faraday's contention that Jackson failed to submit admissible evidence showing she needs third party discovery to arbitrate her current claims.  As the California Supreme Court recently clarified, the "assessment of whether a discovery clause is unconscionable should focus on general factors that can be examined without relying on subsequent developments.  Those factors include the types of claims covered by the agreement, the amount of discovery allowed, the degree to which that amount may differ from the amount available in conventional litigation, any asymmetries between the parties with regard to discovery, and the arbitrator's authority to order additional discovery." (*Ramirez, supra*, 2024 WL 3405593, at *12.)  Post-contract formation circumstances—such as whether the 2018 Agreement permits sufficient discovery to arbitrate Jackson's current claims—are irrelevant.  (See *id*. at *11–12.)

We also reject Faraday's passing contention that any limitation on nonparty discovery is not unconscionable because it is mutual.  Faraday forfeited this argument by failing to support it with meaningful analysis or citations to relevant authority.  (See *Yield Dynamics, Inc. v. TEA Systems Corp.*

26

(2007) 154 Cal.App.4th 547, 557.) In any event, even a seemingly neutral limitation on discovery is unconscionable if it does not permit the employee sufficient discovery to arbitrate statutory claims. (See *Ramirez, supra*, 2024 WL 3405593, at \*11.) Here, the 2018 Agreement's limitation on third party discovery severely limits Jackson's ability to arbitrate FEHA claims, which renders it unconscionable.

> d.      *Expansive confidentiality*

Unlike the 2016 Agreement—which had no confidentiality provision—the 2018 Agreement states "[a]ll aspects of the arbitration, including the hearing and record, are confidential and shall not be open to the public."[4]

The court in *Ramos v. Superior Court* (2018) 28 Cal.App.5th 1042 (*Ramos*) held a similar confidentiality provision was substantively unconscionable. In that case, the parties' agreement required " 'all aspects of the arbitration shall be maintained by the parties and the arbitrators in strict confidence.' " (*Id.* at p. 1065.) The court explained the provision would have a negative practical effect on the employee's ability to pursue her claims because she "would be in violation [of it] if she attempted to informally contact or interview any witnesses outside the formal discovery process. Further, such a limitation would not only increase [the employee's] costs unnecessarily by requiring her to conduct depositions rather than informal interviews, it also defeats the purpose of using arbitration

---

[4]      The 2018 Agreement provides four exceptions to the confidentiality rule: (1) by written agreement of the parties; (2) as appropriate in subsequent proceedings; (3) as appropriate in response to a governmental agency or legal process; or (4) as otherwise required by law.

27

as a simpler, more time-effective forum for resolving disputes. In addition, requiring discrimination cases be kept secret unreasonably favors the employer to the detriment of employees seeking to vindicate unwaivable statutory rights and may discourage potential plaintiffs from filing discrimination cases." (*Id.* at pp. 1066–1067.)

Faraday argues the 2018 Agreement's confidentiality provision instead more closely resembles the provision at issue in *Sanchez v. Carmax Auto Superstores California, LLC* (2014) 224 Cal.App.4th 398 (*Sanchez*).  The agreement in that case required "the arbitration (including the hearing and record of the proceeding) be confidential and not open to the public . . . ." (*Id.* at p. 408.)  The court rejected the employee's argument the provision was unconscionable, noting it saw nothing unreasonable or prejudicial about it.  (*Ibid*.)

Although the 2018 Agreement's confidentiality provision bears some resemblance to the provision in *Sanchez,* we conclude it more closely resembles the provision in *Ramos*.[5]  Like the *Ramos* provision, the 2018 Agreement uses exceptionally

---

[5]    Even if we were to conclude the confidentiality provision is comparable to the one in *Sanchez*, we nevertheless would decline to follow that case.  The *Sanchez* court stated there was nothing improper about the provision in the parties' agreement, but it did not provide meaningful analysis to support that conclusion. (See *Sanchez*, *supra*, 224 Cal.App.4th at p. 408.)  Nor did the court discuss the provision's impact on the employee's ability to conduct informal discovery.  In fact, it is not apparent the employee raised the issue or the court even considered it. (See *Wishnev v. The Northwestern Mutual Life Ins. Co.* (2019) 8 Cal.5th 199, 217 [" 'a decision does not stand for a proposition not considered by the court' "].)

broad language, requiring "all aspects" of the arbitration be held confidential. As in *Ramos*, such sweeping language would preclude Jackson from disclosing or discussing her claims with nonparties, which would effectively prohibit informal discovery. That limitation may severely hamper Jackson's ability to vindicate her statutory rights, especially in light of the other limitations on formal discovery from nonparties.

Faraday urges us to interpret the confidentiality provision much more narrowly. It argues the "most reasonable" interpretation is that "only the arbitration proceedings themselves are 'confidential,' such that the public may not attend and the record of the hearing may not be used in further proceedings with some exceptions."

Although we strive to read contracts in a way that renders them enforceable, Faraday's proposed interpretation is simply not reasonable. (See *Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 682 [courts should interpret contractual provisions, if reasonable, in a manner that renders them lawful].) Had Faraday intended to keep confidential only the proceedings—i.e., the hearing and the record—it easily could have said so explicitly. Indeed, in one of the cases Faraday relies on, the parties' agreement did precisely that, stating " 'the arbitration proceedings, and each and every aspect thereof, including the decision of the arbitrator, shall be and remain confidential.' " (See *King v. Hausfeld* (N.D.Cal. Apr. 9, 2013, No. C-13-0237 EMC) 2013 WL 1435288, at *15.) The 2018 Agreement does not reference "proceedings" and instead extends confidentiality to "[a]ll aspects of the arbitration, including the hearing and record." The word "including" signifies the hearing and record are merely examples of what is to remain confidential,

rather than being exhaustive.  Faraday suggests no other reasonable interpretation of the phrase "all aspects of arbitration" that would be consistent with its limited view of the confidentiality provision.

Faraday alternatively argues Jackson's right to informal discovery is preserved by the provision stating, "[d]iscovery will be available to both Parties."  Faraday contends its interpretation finds additional support in the fact the arbitrator is required to consider "other discovery options" when deciding whether to grant a request for discovery.

Once again, we are not persuaded.  The relevant section of the 2018 Agreement lists three types of discovery—information exchange, written discovery, and depositions—and states the arbitrator shall determine the necessity of each.  Read in context, it is apparent the phrase "[d]iscovery will be available" refers to those specific types of discovery, each of which would be considered formal.  Context also makes clear "other discovery options" refers to formal discovery methods other than what the party requests.  For example, if the party requests a deposition, "other discovery options" would include information exchange and written discovery.  It does not extend to informal discovery.

We also reject Faraday's brief contention that the Federal Arbitration Act preempts the holding in *Ramos*.  Faraday argues, because confidentiality is one of the hallmark features of arbitration, any state law that prohibits it is hostile to arbitration and, therefore, preempted by federal law.  Contrary to Faraday's suggestions, *Ramos* does not prohibit all confidentiality provisions in arbitration agreements.  Rather, it prohibits overly broad provisions that would severely hamper an employee's ability to vindicate her statutory rights.  (*Ramos*,

*supra*, 28 Cal.App.5th at pp. 1065–1067.) The 2018 Agreement's confidentiality provision falls within that category.

### 4. *The 2018 Agreement is unenforceable*

Although we have determined the 2018 Agreement contains several provisions that are substantively unconscionable, that fact alone does not render them unenforceable. Instead, to decide that issue, we apply a sliding scale approach. "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz, supra*, 24 Cal.4th at p. 114.) "Substantive terms that, in the abstract, might not support an unconscionability finding take on greater weight when imposed by a procedure that is demonstrably oppressive." (*OTO, supra*, 8 Cal.5th at p. 130.) Where there is substantial procedural unconscionability, "even a relatively low degree of substantive unconscionability may suffice to render the agreement unenforceable." (*Ibid.*) "The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 912.)

Applying the sliding scale approach here, and considering all the relevant circumstances, we conclude the 2018 Agreement is sufficiently unfair as to be unenforceable.

When Faraday hired Jackson, it required her to enter into an arbitration agreement. That agreement—the 2016 Agreement—was generally fair to both parties, despite being a contract of adhesion. Two years later, Faraday presented a new agreement to Jackson—the 2018 Agreement—which is decidedly

less fair. Faraday made significant substantive changes to the parties' agreement, nearly all of which work to its benefit. Among other changes, Faraday removed Jackson's right to seek administrative remedies, effectively removed her right to seek preliminary relief, limited nonparty discovery, added a strict confidentiality clause, removed a cap on filing fees, prohibited non-PAGA representative and class claims, and newly required the parties to bear their own attorney fees.

Faraday has never offered a compelling justification for those changes. It told Jackson the 2018 Agreement was a "little clearer" than the 2016 Agreement. While certainly true —and a welcome change—that explanation does not address the numerous substantive changes. Faraday just as easily could have rewritten the terms of the 2016 Agreement using the same plain language it employed in the 2018 Agreement. The only other rationale Faraday suggested was that it wanted all its employees to "be on the same page." Again, although a reasonable desire, this does not explain the significant substantive changes Faraday made to the parties' existing agreement. Under these circumstances, it appears Faraday's stated justifications for altering the parties' agreement were pretextual. Instead, Faraday seems to have been motivated primarily by a desire to extract a significantly better deal for itself.

While Faraday was generally free to pursue a better deal, it was not free to do so using oppression and surprise. The record shows Faraday did precisely that, and to an exceptional degree. Rather than alert Jackson to the significant new terms in the 2018 Agreement—so she could make an informed decision about whether to sign it—Faraday wrongly implied it made changes

only to the agreement's form.  This was misleading, at best, and deceptive, at worst.  It also effectively negated Faraday's other efforts to make the process fair.  Under these circumstances, it is virtually impossible to conclude Jackson realized what she was giving up in return for signing the 2018 Agreement.

Because of the extraordinarily high degree of procedural unconscionability surrounding the execution of the 2018 Agreement, a lesser degree of substantive unconscionability is required to render its terms unenforceable.  That standard is easily met with respect to the provisions concerning administrative remedies, injunctive relief, nonparty discovery, and confidentiality.  In addition to being unfairly one-sided, each provision substantially limited Jackson's rights under the 2016 Agreement, but without giving her anything significant in return.  While those same terms might pass muster under some circumstances, in light of the exceptional surprise and oppression surrounding their execution, they are sufficiently one-sided as to be unenforceable here.

Finally, we decline Faraday's request to sever the unenforceable terms.  The relevant provisions concern key aspects of the arbitration process, including discovery, remedies, and confidentiality.  It would be impossible to remove the offending terms without rewriting substantial parts of the parties' agreement.  The unconscionability permeates the entire 2018 Agreement, rendering it unenforceable.  (See *Armendariz, supra*, 24 Cal.4th at p. 122 [a court may decline to enforce an agreement if it is " 'permeated' by unconscionability"].)[6]

---

[6]  Because we conclude the 2018 Agreement is unconscionable and unenforceable, we need not consider Jackson's arguments

**DISPOSITION**

The order is affirmed.  Marissa Jackson is awarded her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, J.

We concur:


EDMON, P. J.


ADAMS, J.

---

concerning Labor Code section 229 and the federal Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (9 U.S.C. § 401 et seq.).